## EVANS v. ORLEANS INDUSTRIAL LIFE, HEALTH, ACCIDENT & BURIAL BEN. INS. CO., INC.

—

(March 21, 1932. Opinion and Decree.)

—

Charles J. Mundy, of New Orleans, attorney for plaintiff, appellee.

Stephen C. Hartel, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. Viola Evans, as beneficiary, brought this action against the defendant, an industrial life insurance company, to recover the face value, i. e., $175 of a policy issued on the life of her father on October 14, 1929.

The petition alleges that the insured died at the Charity Hospital in New Orleans on February 27, 1930, and that documentary proof of death, together with the policy and premium receipt books, were delivered to the defendant, but that it has refused to pay the claim, and that plaintiff is entitled to the sum of $175, plus 6 per cent interest because of the company's arbitrary and illegal failure to pay the claim within sixty days from the date of proof of death, as required by the provisions of Act No. 17 of 1920.

The defendant filed an exception of prematurity on the ground that no · complete proof of death has been furnished to the exceptor in accordance with the provisions of the policy; and, in compliance with the rules of the trial court requiring that exceptions and answer be filed at the same time, answered admitting the payment of the premiums and the death of the insured at Charity Hospital in New Orleans on the date alleged, but denying. liability on the following grounds, to-wit: (1) That complete proof of death was never furnished defendant in accordance with the provisions of the policy; (2) that the insured fraudu-

lently misstated his age in order to obtain the policy of insurance; (3) that the deceased misstated the condition of his health, certifying that he was in sound health, whereas, at the time of the issuance of the policy, he was suffering from a disease of the liver, from which he later died, and that the policy was therefore null and void; (4) and, in the alternative, that, in the event the defendant should be held liable, its liability should be limited to $87.50, or one-half the face value of the policy, because the deceased died within six months from the date the policy issued, the company's liability being limited to that extent under a clause in the policy.

The trial court tried the exception and the merits of the case at the same time, and rendered judgment in favor of the plaintiff for $87.50, with 6 per cent interest from February 27, 1930, and the defendant has appealed.

The defendant offered evidence tending to show that the company had furnished blanks to the plaintiff for the purpose of filing the necessary proof of death and that the plaintiff failed to fill out the blanks and return them to the defendant; that the only proof of death was the statement by the physician of the Charity Hospital, where the insured died, giving a description of the deceased, cause of his death, and the date of his demise. The policy and premium receipt book were also surrendered at the time the physician's statement was delivered to the defendant. Defendant refused to pay the claim, and plaintiff, through her attorney, wrote the following letter:

"New Orleans, La., December 14, 1930.
"Orleans Industrial Life, Health, Accident & Burial Benefit Insurance Company, Inc., New Orleans, La:
"Gentlemen: Viola Evans, as beneficiary of her father, James Evans, who died last spring, has placed in my hands for collection, a claim against you for $140.00 the amount due under his policy, which is in your possession, No. A-376472, and I write to ask what are you going to do about paying the same?

"An immediate reply is requested, as otherwise, I am instructed to file suit without further notice. I remain,
"Very truly yours,
"[Signed] Charles J. Mundy."

Defendant replied as follows:

"New Orleans, La., Dec. 18, 1930.
"Mr. Charles J. Mundy, New Orleans, La.
"Dear Sir: We are in receipt of your letter of December 14th. in reference to the death claim of James Evans. We beg to advise that we have offered to settle this claim on several occasions if they could furnish us with proof of correct age.
"Awaiting your reply, we are
"Yours truly,
"Secty-Treas."

The policy on its face makes the following provision:

"In consideration of the payment of the premium stated in the schedule below, on or before each Monday, doth hereby agree, subject to the conditions below and on page two hereof, each of which is hereby made a part of this contract and contracted by the insured and every person entitled to claim hereunder to be a part hereof, to pay upon receipt of proofs of death of the insured made in the manner, to the extent and upon the blanks required herein, and upon surrender of this policy and premium receipt book or evidence of payments hereunder, the amount stipulated in said schedule, to the executors or administrators of the insured, unless payment be made under the provisions of the next succeeding paragraph."

On the back of the policy, under the caption of conditions, we find the following:

"Proofs of death under this policy shall

be made upon blanks to be furnished by the Company and shall contain answers to each question propounded to the claimant, physician and other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be held. All the contents of such proofs of death shall be evidence of the facts herein stated in behalf of, but not against the Company."

From these facts and policy provisions the defendant argues that the suit is premature, since the plaintiff failed to file proof of death upon the blanks furnished by the company. Plaintiff counters by saying that the company waived the filing of proof of death upon its blanks and limited the issue to the proof of the correct age of the deceased, and that, since the deceased, in the application for the policy, stated that he did not know the date of his birth, and the company's agent certified that he appeared to be 42 years of age, that the question of the deceased's age was waived by the company and was immaterial to the issues presented in the case.

There is no doubt that, under the above-quoted provisions of the policy, the company originally had the right to insist that due proof of death be furnished by the beneficiary upon blanks provided by it and that the plaintiff would not have had any right to file suit until such proof would have been furnished.

Did the company waive and dispense with the usual formal proof of death in its letter of December 18, 1930? From reading the letter one could come to no other conclusion than that the sole reason for withholding payment was that further proof or evidence of the deceased's correct age was desired and required. So that, at the time the plaintiff filed her suit, she was led to believe by the defendant's statement that the only controversy about the policy and payment under it was the correct age of her father. Nothing was said about the company exacting the formal proof of death upon its own blanks. As we read and understand the defendant's letter, the company was satisfied with the proof of death submitted, except that it wanted further proof of the correct age of the deceased. We therefore conclude that formal proof of death on the blanks furnished by the company was waived and dispensed with by it, and that defendant is estopped from urging that technical defense under its exception of prematurity.

Passing to the defense that the deceased fraudulently misrepresented his age, the evidence shows that the agent who solicited the deceased's application for insurance filled in the printed form of application all in his own handwriting, the signature of the deceased being by mark (X), and thus showing that the insured was illiterate and could not write. In response to question No. 4, "Date of Birth," the insured answered, "Do not know." In answer to question No. 5, "Age next birthday," the deceased stated "42." The agent who obtained the application certifies at the bottom of the application as follows:

"I hereby certify that on the date above I saw the person to be insured and recommend the issuance of a policy upon the statements of the applicant on this date. The age of life proposed is 42 years. I consider the risk good.
    "[Signed] Buford, Agent."

Counsel for defendant points out that the physician's certificate of the Charity Hospital states that the deceased's apparent age at the time of his death was 46 years, and that therefore plaintiff's own proof shows that the deceased misrepresented his age. Defendant introduced no evidence to show the correct age of the de-

ceased, and did not attempt to cross-examine the plaintiff to show that her father was over 42 years of age at the time the policy was issued. Certainly the physician's statement of the apparent age of a fatally sick man is not proof of his correct age. But, even if the deceased were 46 years of age at the time the policy was issued to him, it appears to us that the correct age of the insured was immaterial, because the company had the deceased's own statement on the application blank for insurance showing that he did not know the date of his birth. We understand this to mean that he did not know the day, the month, or the year that he was born. In reply to question No. 4 he gives this definite information to the company. In reply to question No. 5 he gives his age as 42 years. The answers are conflicting and irreconcilable. The officers of the company, who read the application for insurance, could arrive at no other conclusion than that the illiterate negro did not know the date of his birth, and, consequently, was only guessing his age. Furthermore, it appears to us that the company relied upon the certificate of their agent, who stated that the age of the life proposed was 42 years and that he considered him a good risk. Under the circumstances, we find that the defense of fraudulent misstatement of age is untenable.

The next defense is that the deceased made a misstatement as to the condition of his health. The evidence shows that the policy was issued without a medical examination of the assured. The agent certifies in his certificate that he saw the person to be insured and considered him a good risk. Therefore there is no doubt that the agent had an opportunity of judging the apparent state of health of the deceased and, if not satisfied with it, could

have exacted a medical examination. He did not exact a medical examination, and recommended the risk as a good one, and the company accepted the opinion of its officer in issuing the policy.

The provisions of Act No. 97 of 1908, in reference to a policy issued under such circumstances, are as follows:

"* * * It shall also be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health. * * *"

In the case of Williams v. Unity Industrial Life Insurance Company, 14 La. App. 680, 130 So. 561, this court rejected the defense of fraud and misrepresentation as to the insured's health, where it was shown that the agent had ample opportunity of observing the state of health of the insured, and where the policy was issued without a medical examination, invoking the provisions of the act of 1908. We conclude that this defense is likewise without merit.

Taking up the final defense, we observe that the policy was issued on October 14, 1929; that the deceased died on February 27, 1930, and therefore the policy had been in force and effect less than six months. The policy on its face provides that one-half of the benefit shall be paid in the event of death within six months after the date of the policy. Therefore only one-half the face value of the policy is due claimant.

For the reasons assigned the judgment appealed from is affirmed.