**Succession of CHERRY v. METROPOLITAN LIFE INS. CO.** *

No. 14181.

Court of Appeal of Louisiana. Orleans.

June 27, 1932.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellant.

James N. Brittingham, Jr., of New Orleans, for administrator.

Frymire & Ramos, of New Orleans, for widow and child.

'. Puneky & Barrios, of New Orleans, for creditors.

HIGGINS, J.

This is a suit to recover the proceeds of a life insurance policy amounting to the sum of $780.

The defense is that the assured had been attended by a physician for pulmonary tuberculosis within two years before the date of the issuance of the policy, and was suffering from the said disease when his application for insurance was filed and the policy issued to him; that he suffered from it continuously thereafter until his death several months later; and that, under the circumstances, by virtue of a special clause in the policy, excluding this risk, the company was not liable, because its agent, although exercising due diligence, could not have ascertained the true condition of assured's health.

There was judgment in favor of plaintiff as prayed for, and defendant has appealed.

The case was tried upon a stipulation of facts reading as follows:

"It is stipulated between James N. Brittingham, Jr., attorney for plaintiff, and Spencer, Gidiere, Phelps and Dunbar, attorneys for defendant, that the following facts, subject, however, to the objection of irrelevancy and immateriality, are admitted and shall be considered as proven:

"The insured lived with Mrs. Hood for a period of about eighteen months. Joseph L. Sanford, a solicitor of insurance and collector of premiums for the defendant company, called at the Hood home periodically about three times a month during this period and prior thereto, collecting premiums from the Hood family, on policies held by members thereof in the defendant company.

"That said Sanford during those calls, solicited William L. Cherry to take out insurance, and that as the result thereof the insured, on November 8, 1926, made written application for the issuance of the policy herein sued on.

"That said policy was issued without any medical examination (on November 29, 1926). That the members of the Hood family with whom the insured lived, and whom he saw constantly, and with whom he was intimately acquainted, did not know and had no reason to believe that the insured had pulmonary tuberculosis at the time when said application was made or at the time when said policy was issued.

"That on November 5, 1926, the insured visited Touro Infirmary in New Orleans and was examined in its medical clinic. That an X-ray of the chest of the insured was made, and that this showed a well advanced stage of pulmonary tuberculosis.

"That the insured left New Orleans about December 1, 1926, and went to Dallas, Texas. That he was attended by physicians there continuously from within a few days after his arrival until February 19, 1927, for pulmonary tuberculosis, and that miscroscopic tests showed him to have pulmonary tuberculosis.

"That the insured died on February 19, 1927, in the Woodlawn Hospital, Dallas, Texas, and that the cause of his death was pulmonary tuberculosis.

*Rehearing denied October 3, 1932.

"Counsel for plaintiff and defendant jointly offer the policy issued on the life of the insured, and admit that the said policy, which is marked Plaintiff-1, is the original of the said policy."

The defense is predicated upon the following provision of the policy:

"If, (1) the Insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof, the Insured has been rejected for insurance by this or by any other company, order or association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary, then, in any such case, the Company may declare this policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this policy, shall be limited to the return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company."

Plaintiff contends first that, under the provisions of Act No. 97 of 1908, failure of the insurance company to exact a medical examination of the assured, before the issuance of the policy, raised the presumption of waiver of all questions of the state of health of the assured and precluded the company from interposing any defense on that ground.

Plaintiff argues secondly that under the agreed statement of facts it appears that a medical examination of assured was waived, and that the agent who solicited the deceased's application for insurance and recommended the risk had an opportunity to ascertain the true condition of the health of the assured, or might have acquired knowledge of the condition of his health with reasonable diligence; therefore, the company waived its right to claim a forfeiture of the policy based on the ground that the assured was suffering from tuberculosis at the time the application was filed and the policy issued, invoking the provisions of Act No. 97 of 1908.

Defendant's counsel says that Act No. 97 of 1908 is only applicable where the two conditions precedent, as set forth in the act, have been proven, to wit:

First. That the policy must have been issued without a medical examination of the assured by a physician; and,

Second. That it must appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation.

Counsel for defendant concede that the facts of the case meet the first condition, but contend that under the agreed statement of facts the agent who solicited the insurance did not have a reasonable opportunity to ascertain the true condition of the deceased's health and could not have discovered the disease by the exercise of reasonable diligence, because only a medical examination could have revealed its existence.

Act No. 97 of 1908 reads as follows:

"Providing that life, health and accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination by a physician, shall waive their right to claim forfeiture for misrepresentation, etc.; under certain conditions.

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That whenever life, health or accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination of the assured by a physician, it shall be presumed (whenever it appears that the agent of the company has had an opportunity to ascertain the true condition of the health, habits or occupation of the assured, and has certified to the company the desirability of the risk), that the knowledge acquired, or which might have been acquired with reasonable diligence by the agent of the company in securing the application, as to the health, habits or occupation of the assured, has been disclosed to his principal; and it shall also be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the company in writing the application, or of the collector of the company in collecting the premiums from the assured, shall be imputed as notice to the company, as to the health, habits or occupation of the assured."

As we read and understand the act of 1908, it means that where a policy contains a clause restricting the company's liability as to certain diseases and giving the company the right to declare the policy void if the assured, previous to and at the time of the issuance of the policy, was suffering from any of these diseases, and the company did not require a medical examination of the assured before issuing the policy, and the agent who wrote the application for the insurance and certified to the desirability of the risk, or the company's collector of premiums, had an opportunity to discover or by the exercise of reasonable diligence could have discovered or

acquired knowledge of the true condition of the health of the assured, the company is estopped to set up the defense that, under the special clause of the policy, the assured died of any of the excepted diseases, because, under the express terms of the act of 1908, the company is charged with such actual knowledge as the agent or collector had concerning the condition of the health of the assured, or imputed knowledge as the agent or collector should have acquired through the exercise of reasonable diligence, and therefore the company is considered as having waived the right to invoke the defense that the assured died of one of the excepted diseases under the special clause of the policy. But where the policy contains such a special clause excepting liability of the company as to certain diseases, and a medical examination is not required by the company, and neither the agent who wrote the application and certified to the desirability of the risk, nor the company's collector of premiums, had an opportunity of discovering or through the exercise of reasonable diligence could have discovered that the assured was suffering from a disease specially excepted from coverage by the policy, the company is not estopped to defend on the ground that the assured was suffering from any one of the said excepted diseases, because the company is not then presumed to have had any knowledge of the disease, as the agent or collector of premiums had neither actual nor constructive knowledge of the disease, and, consequently, the company is not considered as having waived the defense as to the ill health of the assured.

The first contention of the plaintiff, therefore, is clearly erroneous, because it is predicated upon the hypothesis that the failure to exact a medical examination of the assured is all that is required in order to make the provisions of Act No. 97 of 1908 applicable. A mere reading of the act shows that under its express terms the above-mentioned two conditions must obtain before the company is presumed to have waived the defense of ill health of the assured. Silver v. National Life & Accident Ins. Co., 6 La. App. 95; Pierce v. Liberty Industrial Life Ins. Co., 7 La. App. 626; Polite v. National Accident & Life Ins. Co., 9 La. App. 83, 118 So. 846; Williams v. Unity Industrial Life Ins. Co., 14 La. App. 680, 130 So. 561; Evans v. Orleans Industrial, etc., Ins. Co., 19 La. App. 408, 140 So. 507, 509; Hammond v. Metropolitan Life Ins. Co., 12 Orl. App. 82.

We shall next consider the second point in the case, which, in its final analysis, is whether or not the facts of the case show that the company's agent or collector of premiums had an opportunity to discover the true condition of the assured's health, or by the exercise of reasonable diligence could have acquired such knowledge.

Due to the fact that the application for insurance, which was signed by the deceased, was not annexed to, or made a part of, the policy by the defendant, the document was not admissible in evidence under Act No. 52 of 1906, as amended by Act No. 227 of 1916. But after the case was submitted in this court, the application was introduced in evidence by consent of both counsel. However, the attorneys did not supplement the agreed statement of facts tending to show under what circumstances the application was signed and as to the manner of propounding to the assured the questions contained in it. The record is silent as to the physical appearance of the assured at the time he signed the application as to whether he appeared to be healthy or sickly. While under the agreed statement of facts it is shown that those living in the same household with the deceased did not know that he was suffering from tuberculosis, the statement of facts does not go so far as to show that these parties believed that the deceased was either in a healthy or sickly condition at that time.

Both counsel in their respective briefs have objected to the inferences that the opposing counsel have drawn from the statement of facts, and have stated that they consider it unjust and unfair for the court to indulge in such inferences.

There are a number of matters that suggest themselves to our minds, which would be relevant, tending to show to what extent inquiry or investigation by the agent and collector of premiums for the company was made by him to ascertain the true condition of the assured's health, but the statement of facts is very meager and incomplete on that score.

After carefully considering the application and agreed statement of facts, we believe that it would be in the interest of justice to afford both parties to this litigation an opportunity to introduce further evidence on the second issue in order that we might be in a position to more intelligently and accurately decide that point. The case should be remanded for the further reason that the trial judge did not have the application before him in passing upon the case. We have therefore concluded to remand the case for the purpose of introducing such additional evidence as either party desires to offer tending to support their respective positions.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that this case be remanded to the Civil District Court for the parish of Orleans for further proceedings according to law and not inconsistent with the views herein expressed.

Reversed and remanded.