## HULBERT v. NATIONAL LIFE & ACCI-DENT INS. CO., Inc.

### No. 14558.

Court of Appeal of Louisiana. Orleans.

Nov. 27, 1933.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

Richard A. Dowling, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit on a life insurance policy. The issuance of the policy, payment of premiums, and the death of the insured are admitted, but defendant refuses to make payment, and bases its refusal on the contention that, at the time the policy was applied for and at the time it was issued, the insured was afflicted with heart disease, and that, although he knew his condition, he did not divulge it to any representative of defendant company, that his condition was not apparent and could not have been discovered by a visual examination, and that therefore the agent who received the application and who saw the insured could not ascertain, even with reasonable diligence, the true physical condition of the insured.

We do not find the policy in evidence. It is conceded that it contained a stipulation reading as follows: "If the insured is not alive or is not in sound health on the date hereof; or if before the date hereof, the insured has been rejected for insurance by this or by any other Company, order or associa-tion, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection or previous disease is specifically recited in the 'Space for Endorsements' in a waiver signed by the Secretary, then, in any such case, the Company may, within the contestable period, declare this Policy void and the Liability of the Company shall be limited to the return of premiums paid on the Policy."

There is no doubt whatever that at the time the policy was applied for, and at the time it was issued the insured was not in sound health and was, in fact, afflicted with one, at least, of the diseases mentioned in the above-quoted stipulation, because the evidence shows that on three occasions prior to the issuance of the policy he had, for an extended period on each occasion, been a patient in a local hospital and had been treated for "syphilis, tertiary general and valvular heart disease, aorta insufficiency," and that the death, which occurred less than two months after the policy was issued, was caused by the same combination or complication of diseases.

Since the death resulted primarily from one of the diseases mentioned in the policy stipulation set forth, and since the insured was afflicted with the diseases, and therefore was not in sound health at the time the policy was issued, there can be no recovery under the policy, unless it can be said that defendant company can be charged with knowledge of the true condition of the insured, either because it had actual knowledge of that condition or because it might, by the exercise of reasonable diligence by one of its employees, have obtained such knowledge.

If it had such knowledge, or should have had it, and nevertheless issued the policy, then it cannot now be heard to resist payment on the ground that the insured was at that time suffering from one of the diseases set forth.

In Cherry v. Metropolitan Life Ins. Co., 143 So. 121, 122, we found before us facts remarkably similar to those now under consideration.

There the insured died of a disease with which he had been suffering at the time of the issuance of the policy.

To the suit by the claimant for the proceeds of the policy the insurer interposed the defense that the insured was not in sound health when the policy was issued, and that the particular disease from which he was suffering was one of those enumerated in a policy stipulation very similar to that which we have quoted above.

It was contended that the insurer could not be heard to complain that the insured,

at .the time of the issuance of the policy, was afflicted with one of the enumerated diseases because there had been no medical examination and because the application for insurance had not been attached to the policy; the contention being that, under Act No. 97 of 1908, where there has been no medical examination and where the application has not been attached to the policy, the insurer will be presumed to have waived the policy stipulation referred to.

We held in the Cherry Case that a defending insurer in such situation is prevented by the said statute from making the defense now presented only "where the two conditions precedent, as set forth in the act, have been proven, to wit:

"First. That the policy must have been issued without a medical examination of the assured by a physician; and,

"Second. That it must appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation."

We adhere to the views expressed in that case; and we therefore conclude that the defense that at the time the policy was issued the insured was not in sound health and was suffering from one of the enumerated diseases should prevail, unless it be shown, not only that there was no medical examination, but also that the soliciting agent of the company had an opportunity, by the exercise of reasonable diligence, to discover the true condition of the applicant.

■ It is true that the evidence shows that there was nothing in the external appearance of the insured to put the agent on guard, or to cause him to suspect a latent ailment. Dr. Faget testified: "I don't believe from casual observation any layman could give a diagnosis of heart disease or syphilis."

It is also true that the evidence preponderates to the effect that the insured told the agent that he was not suffering from any of the diseases set forth, but it is equally true that the said soliciting agent of the company and the superintendent both knew that the insured had been treated at the United States Marine Hospital in this city. The soliciting agent, Mr. Haydel, said: "I always ask the parties, to get the information as quick as possible, when a man says he has been sick before, and they told me he had been in the Marine Hospital in 1931."

Mr. Brehm, the superintendent, gave the following testimony:

"Q. * * * When you got the application you said you read it carefully and noted the fellow had been in the Marine Hospital? A. Yes, sir.

"Q. Well, did you go to the Marine Hospital to find out why he had been there before you accepted this application? A. No, sir.

"Q. You didn't check that at all? A. No, sir.

"Q. You know where the Marine Hospital is? A. Yes, sir."

It is not denied that, had the records of the Marine Hospital been inspected, they would. have shown the true condition of the insured and would have disclosed his various visits and his many ailments, and we therefore cannot be persuaded that it would be correct to say that the agent and the other employees did not have an opportunity to ascertain the true condition of the insured's health.

Nor does it appear to us that fraud can be charged to the insured. It is said that, although he did disclose the fact that he had been treated at the hospital, he fraudulently · stated that while there he had been treated only for pneumonia. Since he told the agent the name of the hospital and the approximate time of his visits there, the agent should have examined the hospital records and. made certain for himself that the insured was an acceptable risk. Under such circumstances, an agent who fails to obtain information which could have been so easily derived cannot be said to have used · the reasonable diligence which, under the statute, must be used if an insurer is to escape the penalty imposed by the. said act.

The judge, a quo, was familiar with our ruling in the Cherry Case. He followed it carefully in passing upon the admissibility of evidence, and, when the record was complete, apparently found that the agent should have known the true condition of the insured. He therefore undoubtedly felt that the insurer, in accordance with the act of 1908, should be held to have waived the policy stipulation relied upon. He therefore rendered judgment for plaintiff. Since we feel that he was correct, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.