## EAGAN v. METROPOLITAN LIFE INS. CO.*
### No. 14863.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

*Rehearing denied June 11, 1934. Writ of certiorari denied July 2, 1934.

Spencer, Gidiere, Phelps & Dunbar and W. B. Spencer, Jr., all of New Orleans, for appellant.

Raymond Gauche and John T. Charbonnet, both of New Orleans, for appellee.

JANVIER, Judge. ·

Plaintiff, as administratrix of the estate of Frank Romano, brings this suit on a policy of insurance issued on the life of the said Romano. The defense is that the deceased died as the result of a disease with which he was afflicted at the time of the issuance of the policy; that the disease was one of those named in the policy stipulation reading as follows:

"If, (1) the Insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof, the Insured has been rejected for insurance by this or by any other company, order or association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary, then, in any such case, the Company may declare this policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this policy, shall be limited to the return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company."

There can be no doubt that the death was caused by one of the specified diseases and that the deceased was afflicted with the disease when the policy was issued, but plaintiff contends that, notwithstanding these facts, there is liability because of the provisions of Act No. 97 of 1908, which we have often quoted, but which, for convenience, we again set forth:

"Providing that life, health and accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination by a physician, shall waive their right to claim forfeiture for misrepresentation, etc.; under certain conditions.

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That whenever life, health or accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination of the assured by a physician, it shall be presumed (whenever it appears that the agent of the company has had an opportunity to ascertain the true condition of the health, habits or occupation of the assured, and has certified to the company the desirability of the risk), that the kowledge acquired, or which might have been acquired with reasonable diligence by the agent of the company in securing the application, as to the health, habits or occupation of the assured, has been disclosed to his principal; and it shall also be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the company in writing the application, or of the collector of the company in collecting the premiums from the assured, shall be imputed as notice to the company, as to the health, habits or occupation of the assured."

It is conceded that the policy was issued without medical examination; but defendant contends that, ·since the disease was one ·which could not have been discovered except by a medical examination, the company's

agent who secured the application did not have opportunity, by the exercise of reasonable diligence, to ascertain the true condition of the applicant's health and that, therefore, the statute does not prevent the setting up of the defense relied on; in other words, that, where a policy is issued without a medical examination, the requirement of the statute that the agent must exercise reasonable diligence to ascertain the true condition of the health of the applicant and that, if he does not do so, the company nevertheless will be presumed to have had knowledge of the said true condition, does not make it necessary that a medical examination be resorted to, but that reasonable diligence has been exercised when the agent has otherwise discovered all except that which might have been discovered only by a medical examination.

Plaintiff, on the other hand, maintains that reasonable diligence has not been exercised unless a medical examination has been made, and that since, in the instant case, there was no such examination, there was no exercise of reasonable diligence, and that, as a result, because of the provisions of the act of 1908, it must be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the applicant was at the time of the issuance of the policy suffering from one of the specifically set forth diseases, and was, therefore, not in good health.

In the lower court there was judgment for plaintiff, and defendant insurer has appealed.

It is evident that, except as a result of medical examination, it would not have been possible for the agent of the insurer to have discovered the true condition of the insured because even his friends and relatives did not know of that condition. In fact, his sister, who, as administratrix of his estate, is plaintiff in this suit, testified that "he was apparently in good health" and that she "had no reason to suppose that he was suffering from any disease such as the disease he had when he died" and that none of the neighbors realized "that he was suffering from such a disease * * *."

■ The question is an interesting one. In Cherry v. Metropolitan Life Ins. Co., 143 So. 121, we gave it full consideration, and in that case reached and announced the conclusion that the statute cannot be construed as plaintiff here asserts we should interpret it.

If plaintiff's contention is to be adopted, then the statute must be construed as declaring that, where there is no medical examination, the insurer must be presumed to know all that a medical examination would have disclosed. We see no necessity for another extended discussion of the subject, and we adhere to the views which we have set forth in the Cherry Case and which we also expressed in Hulbert v. National Life & Accident Ins. Co., 151 So. 87, and which are also found set forth in Hammond v. Metropolitan Life Ins. Co., 12 Orleans App. 82.

We have, however, given serious consideration to the contention that the Supreme Court, in Massachusetts Protective Ass'n v. Ferguson et ux., 168 La. 271, 121 So. 863, 865, to which we did not directly refer in the Cherry Case, announced a view diametrically opposed to that reached by us in the Cherry Case. We gave the Ferguson Case full consideration, but we did not interpret it as holding that the health of the applicant cannot be availed of as a defense where there has been no medical examination, and we, therefore, did not cite it by name, but we did cite our decision in Williams v. Unity Industrial Life Insurance Co., 14 La. App. 680, 130 So. 561, in which we had, in terms, cited the Ferguson Case. In the Ferguson Case the court held that the insured himself believed and was justified in believing that the disease, which he had previously had, had been cured, and that, therefore, there had been no fraud on his part in failing to disclose a fact of which he himself either had no knowledge, or was justified in overlooking, and that there was no certainty that the disease with which the insured had previously been afflicted was the disease referred to in the questions which he had answered. The court said:

"Defendant had no reason to believe, when he made application for the policy herein, that he had not fully recovered from an attack of dysentery which he suffered while serving in the army. If he recalled that illness at all, in the absence of a direct question bearing thereon, it is probable that he did not consider it of sufficient importance to mention in the application. His action in so doing, however, cannot be considered as fraudulent."

After deciding that there had been no fraudulent concealment, it is true that the Supreme Court used language which might, at first, seem to indicate an adherence to the views here advanced by plaintiff. That language is as follows:

"Another, and insuperable, bar to the demand of the plaintiff for the cancellation of the policy on the ground of misrepresentation is to be found in our statutory law itself.

The policy was issued without the requirement of any medical examination of the defendant, although, according to his uncontradicted testimony, he was in no haste for the policy, and there was plenty of time to make such examination. Since the plaintiff company had ample opportunity to ascertain the true condition of defendant's health but failed to do so, under the provisions of Act No. 97 of 1908 it cannot claim the forfeiture of the policy on the ground that defendant's answers to the questions set forth in his application were untrue."

We feel, however, that there is a difference between the contention made there and that which now confronts us.

There the insurer was attempting to cancel a policy because of an alleged untruthful statement made by the insured.

Here the truth or falsity of the statements made by the insured is not in any way involved, but the insurer contends that, because of a fact of which it had and could have had no knowledge, the policy never came into legal existence; that at the time it was issued the assured was afflicted with one of the excepted diseases and that this fact was not known to even the friends and relatives of the assured and, therefore, was not and could not have been discovered by the agent of the insurer, but would have come to light, if at all, only as the result of a medical examination.

The Supreme Court, in Brown v. Continental Casualty Company, 161 La. 229, 108 So. 464, 465, 45 A. L. R. 1521, stated that in such cases where there has been no medical examination the insurer shall be presumed to have knowledge not of such ailments or diseases as could have been discovered only by such an examination, but only of such conditions as would have manifested themselves to a layman who might make diligent inquiry and investigation into the health, habits, and occupation of the insured.

It is true that in the Brown Case the court held the insurer to be liable, but it did so because no inquiry had been made by the agent. The court said:

"No inquiry whatever was made by the company or its agent, as to whether the applicant had ever had stomach trouble, headache or insomnia, or with regard to his health or habits, in any respect. The only ailments inquired about specifically were the serious ailments specified in the application blank; i. e. tuberculosis, paralysis, rheumatism, hernia, and appendicitis. If the ailments which the applicant in this instance had—stomach trouble and consequent headaches and insomnia—were not important enough for the company or its agent to inquire about, when the company and its agent had ample opportunity to inquire about them, then, by the terms of the act of 1908, and in the absence of any allegation of fraud, it must be presumed that the company waived its right to claim a forfeiture of the policy on the ground that the insured did not make true and full answers in his application, as to his health, in that respect."

Our conclusion is that where there is no medical examination and where the assured is shown to have been suffering, at the time of the issuance of the policy, with one of the excepted diseases, if the disease is such as would only have manifested itself on medical examination and if the agent made a full investigation, then the existence of the disease may be availed of as a defense under the quoted conditions of the policy. This is so not because of false statements of the assured about his condition, but because, regardless of whether there have been false statements, there is no protection where, at the time of the issuance of the policy, there is in existence one of the excepted diseases and the insurer is not charged with knowledge of it.

Had the Legislature intended the act of 1908 to be interpreted as plaintiff contends it should be, it would not have been necessary to have used the complicated and involved language which we find. It could merely have been provided that, if no medical examination is made, then the condition of health of the assured at the time of the issuance of the policy shall not be availed of as a defense. It would not have been necessary to have added anything more.

Our attention is directed to several cases by this and other Courts of Appeal in this state, and it is said that in each of them there is announced the doctrine that, if there is no medical examination, the agent has not availed himself of the opportunity to discover the true facts as to the health, habits, and occupation of the insured. The cases to which our attention is particularly directed are: Kilbourne v. Life & Casualty Ins. Co. of Tenn., 2 La. App. 275; Langston v. U. S. National Life & Casualty Co., 4 La. App. 474; Silver v. National Life & Accident Ins. Co., 6 La. App. 95; Oglesby v. Life Ins. Co. of Va., 12 La. App. 311, 124 So. 551, 553, and McConathy v. North American Acc. Ins. Co., 14 La. App. 27, 129 So. 238, 239.

In none of these cases was it held that a medical examination must be resorted to in such situations as this.

In the Kilbourne Case the court, referring to the act of 1908, said:

"The act in question provides that under certain conditions, all life, health and accident insurance companies which issue policies or contracts of insurance to the insured without medical examination by a physician, shall waive their rights to claim forfeiture for misrepresentation."

A reading of the opinion plainly shows that the "certain conditions" referred to are that the agent shall have failed to make proper inquiry.

In the Langston Case the question involved was whether a policy could be voided on a plea of misrepresentation. The court held that there had been no misrepresentation.

In the Silver Case the court referred to the fact that there had been no medical examination, but, instead of saying that this fact precluded the insurer from setting up the defense, on the contrary held that the insurer might make the defense if it could show that it had not had an opportunity to ascertain the true condition of the health of the insured, and the decree was rendered against the insurer because, as the court said:

"It also appears that the insurance company had an opportunity to ascertain the true condition of the health, habits and occupation of the assured."

In the Oglesby Case the court also said that the decision against the insurer resulted from the fact that:

" * * * that the agents of the assurer did not make any inquiry whatsoever of other persons as to the condition of the health of the applicant, the excuse being that the applicant appeared to be in good health, and that the nature of the mortal maladies with which she is alleged to have been affected were such that only a physician could have ascertained her true condition."

We call particular attention to the fact that the court did not say that the disease from which the insured was suffering could have been ascertained only by a physician, but that the insurer so contended, and the court said that in such case it was not sufficient to rely on the fact that the disease could be discovered only by a physician, but that the insurer should make, through its agent, an investigation into the true condition of the health of the assured. If, as the result of the investigation, the disease did not come to light, and if it should then appear that, as a matter of fact, the disease was such that only a physician could have discovered it, the

defense which we find here may be availed of. In fact, in the latter part of the opinion the court states that the law contemplates that:

" * * * the assurer must determine the risk by an investigation made before agreeing to contract; either from the answers of the applicant to questions propounded to him, and an examination made by the physician selected by the assurer, or from the answers of the applicant to questions propounded to him and an investigation made by the agents of the assurer."

We call attention to the alternative "or," which indicates plainly that the court felt that the assurer may come to a decision either as the result of a medical examination, or as the result of an investigation by the agent.

In the McConathy Case the court held that the agent had had an opportunity to make a personal investigation and had not done so and that, therefore, the presumption arose that the company had waived its right to forfeit the policy. The court said:

"Under the showing made, defendant's agent will be presumed to have had an opportunity to ascertain all the necessary facts concerning plaintiff's health, and certified same to the company."

There is an additional point sought to be made by counsel for plaintiff, and that is that at the time the agent of the insurer delivered the policy the insured was already in the hospital afflicted with the fatal disease and that the agent could have discovered this had he made more diligent inquiry.

When the agent called to make delivery of the policy, he inquired for the insured and was told by the sister of the insured, which sister, in her capacity as administratrix, is plaintiff in this suit, that her brother was visiting in another part of the city. She was careful not to disclose the fact that the insured was ill at the time. In fact, the evidence convinces us that she denied that he was ill, telling the agent that the insured was attending a "fish-fry." She cannot now be heard to complain that the agent did not refuse to adopt her statements as true and that he did not pursue his inquiry further. He did all that was required of him in ascertaining from her that the insured was well and was visiting elsewhere.

While we do not see that the matter is referred to in the pleadings, the policy condition provides that where a policy is forfeited for reasons such as those set forth here "any claim * * * shall be limited

to the return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company." There was no fraud in this case and, therefore, the liability of the company is limited to the return of the premiums; but since no claim is made for these premiums, all that we find it necessary to do is to reserve to the plaintiff the right hereafter to make claim for such premiums.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff's suit at her cost. Plaintiff's right to claim the return of the premiums paid is reserved.

Reversed.

WESTERFIELD, J., dissents.