No. 3681

Second Circuit

—

OGLESBY v. LIFE INS. CO. OF VIRGINIA

—

(November 18th, 1929. Opinion and Decree.)
(December 31st, 1929. Rehearing Refused.)

—

312

Bryan E. Bush, of Shreveport, attorney for plaintiff, appellee.

Wilkinson, Lewis, Wilkinson & Burford, of Shreveport, attorneys for defendant, appellant.

WEBB, J. The defendant appeals from a judgment rendered against it on an insurance policy written by it on the life of Mrs. Bessie Oglesby, which was signed by the assurer on June 25, 1928, and delivered a few days thereafter to the assured, who died on January 6, 1929.

The amount payable under the contract in event of death of the assured was less than $500, and the premiums were payable weekly, thus placing the contract within that class of insurance defined by Act No. 65 of 1906, as industrial insurance; and appellant complains of the ruling of the court sustaining an objection to the introduction of any evidence to support the defendant's allegations that the assured had made false and fraudulent statements in an application for insurance on the faith of which, it is alleged, the defendant contracted or in support of the allegation that the assured was not in sound health on the date the policy was delivered.

Appellant urges that the objection to the introduction of evidence in support of its allegations was based on Act No. 52 of 1906, as amended and re-enacted by Act No. 227 of 1916, and Act No. 97 of 1908, and that the ruling was based upon those statutes, which appellant urges were not applicable to the contract sought to be enforced, and, in any event, that Act No. 97 of 1908 alone was applicable, and not Act No. 52 of 1906, as amended.

Defendant concedes that those statutes have often been applied to industrial insurance contracts (Brown v. Casualty Company, 161 La. 231, 108 So. 464, 45 A. L. R. 1521; Whitmeyer v. Liberty Industrial Ins. Co., 166 La. 328, 117 So. 268; Kilbourne v. Life & Casualty Ins. Co., 2 La. App. 275; Silver v. National Life Ins. Co., 6 La. App. 97; Pierce v. Liberty Industrial Ins. Co., 7 La. App. 626; Polite v. National Accident Ins. Co., 9 La. App. 83, 118 So. 846), but it urges that the court's attention was not directed to Act No. 65 of 1906, in which industrial insurance contracts are defined, and the conditions with which corporations and other legal persons who undertake to write such class of insurance must comply, nor to Act No. 256 of 1912, providing for the organization, admission, and conditions under which fraternal societies are permitted to write insurance contracts in this state, and the decision in Mull v. Sovereign Camp of the Woodmen of the World, 2 La. App. 401, in which it was held that Act No. 52 of 1906, as amended, was not applicable to insurance contracts written by fraternal associations.

In other words, it is urged that Act No. 52 of 1906, as amended, which declares that all life insurance policies shall contain the contract between the parties, and that, in order for the application of the assured and the statements made thereunder to be made a part of the contract, it is essential that the application and statements be written and indorsed or attached to the contract, and that Act No. 97 of 1908, which in substance declares that, where an insurance policy is issued

without a medical examination of the assured, the solicitor of the assurer who takes the application for the policy or collects the premiums, shall be considered as the agent of the assurer, imputing the knowledge which the agent may have or could have obtained with the exercise of reasonable diligence to his principal, are general statutes, and not applicable to industrial insurance contracts, which it is urged are under the provisions of Act No. 65 of 1906, placed in a special class, and that such contracts must be construed under the general law relative to contracts and according to the provisions of the contract.

The policy sought to be enforced here declares that it contains the entire contract between the parties, and on its face there appear all of the essentials of a valid contract on the part of the assurer; that is, its consent and a valid right and cause for its obligation, and there is not any reference whatsoever to any application or statements previously made by the assured and, although defendant alleges that the contract was entered into in faith of the truth of representations made by the assured, it is not alleged that there was any contemporaneous agreement, either verbal or written, between the parties stipulating, either that the assurer had consented to the contract in faith of the truth of any representations made by the assured or that the contract should be considered in connection therewith; and, even conceding that neither Act No. 52 of 1906, as amended, nor Act No. 97 of 1908, are applicable, the contract suggests that defendant could not avoid its obligations thereunder on the ground that the assured had made false representations as to matters which do not appear from the contract to have been considered by the parties.

But, considering the defendant's contention that industrial life insurance contracts are placed in a special class, and that neither Act No. 52 of 1906, as amended, nor Act No. 97 of 1908, are applicable to such contracts we do not find anything in Act No. 65 of 1906 which could be said to indicate that it was the intention of the Legislature to place such contracts beyond the scope of general statutes previously enacted, or which might be subsequently enacted.

The title and body of the statute (Act No. 65 of 1906), we think, clearly shows that its only object was to permit corporations and other legal persons to issue life insurance policies, when the amount payable under the contract was less than $500, and the premiums were to be paid at short intervals, without complying with other conditions required of companies writing policies for larger amounts, or where the premiums were payable quarterly, etc., and, conceding that insurance policies issued by fraternal societies and associations to their members are not, under the provisions of Act No. 256 of 1912, affected by either Act No. 52 of 1906, as amended, or Act No. 97 of 1908, it is sufficient to state that it is not suggested that defendant is a fraternal society or that its business was conducted on the fraternal plan, or that there was any other relation between defendant and the assured than resulted from their agreement.

As stated, the application and answers of the assured were not attached to the policy when it was issued, and it is conceded that, if Act No. 52 of 1906, as amended, is applicable, defendant could not under the provisions of that statute use the applications and answers of plaintiff thereunder in defense of the action to enforce the contract (Whitmeyer v.

Liberty Industrial Ins. Co., 166 La. 328, 117 So. 268), but, as previously stated, it is urged that Act No. 52 of 1906, as amended, is not applicable, and that Act No. 97 of 1908 is alone applicable.

There is not any apparent conflict in the provisions of Act No. 52 of 1906, as amended, and Act No. 97 of 1908, in so far as the statutes may be applicable to life insurance contracts, and, if Act No. 52 of 1906, as amended, be considered as expressing the general policy of the law, the latter might be considered as supplementary of the former. However, the title of Act No. 52 of 1906, as amended, restricts its provisions to life insurance contracts, while the title of Act No. 97 of 1908 apparently restricts its provisions to life, accident, and health insurance policies which are issued without a medical examination of the assured, and it appears that the construction heretofore placed upon the statutes has been that Act No. 97 of 1908 is alone applicable when the policy is issued without a medical examination of the assured.

Defendant, however, apparently concedes that the statute (Act No. 97 of 1908) is not merely a declaration that certain facts will enable the assured to plead estoppel; and that when, as in the present case, the application of the assured has been taken by a solicitor of the assurer, and the policy has been issued without any medical examination of the applicant, the assurer shall be presumed to have waived any right to claim a forfeiture of the policy on the ground that the assured did not make full and true answers in the application as to his or her health, in the absence of an allegation that the solicitor of the assurer did not have an opportunity to ascertain the true condition of the health of the applicant, and that he could not have obtained such information in the exercise of reasonable diligence.

Defendant alleges that its agents had made an investigation of the health of the applicant, and we might assume that agents of the assurer had opportunity to ascertain the true condition of the health of the applicant, but defendant does not state what was the nature of the investigation made by its agents; that is, of whom they inquired as to the health of the applicant, and the answer, we think, clearly indicates that the agents of the assurer did not make any inquiry whatsoever of other persons as to the condition of the health of the applicant, the excuse being that the applicant appeared to be in good health, and that the nature of the mortal maladies with which she is alleged to have been affected were such that only a physician could have ascertained her true condition.

We think the statute anticipated the very situation with which the answer of the defendant indicates its agents were confronted, but we do not think it regards the situation as showing that the agents of defendant were without an opportunity to ascertain the true condition of the applicant's health, and relieve them of exercising reasonable diligence to obtain such information, otherwise the statute might as well not have been written, and we do think evidence was admissible under the answer to overcome the presumption that defendant waived any right it may have had to claim a forfeiture of the policy on the ground that the assured had not made full and true answers as to the condition of her health.

The policy contained a provision that the assurer did not assume any obligation thereunder, unless the assured was in sound health at the time the policy was

delivered, and that in such event the contract should be void; and the answer of the defendant set up that the health of the assured was at the time of the delivery of the policy in the same condition as it alleged existed at the time of the application, and it is urged that, should it be held that defendant waived the right to claim a forfeiture of the contract on the ground that the assured had not made full and true answers in the application as to the condition of her health; it should nevertheless have been permitted to show she was not in sound health by reason of the continuance of the pathological conditions existing at the time of the application.

The law, we think, clearly contemplates that the assurer must determine the risk by an investigation made before agreeing to contract; either from the answers of the applicant to questions propounded to him, and an examination made by the physician selected by the assurer, or from the answers of the applicant to questions propounded to him and an investigation made by the agents of the assurer. And where, as in the present case, the assurer has waived any right to claim a forfeiture of the policy on the ground that the answers of the assured were not full and true, the assurer should not be permitted to show that the assured was in fact affected by the diseases as to which she was interrogated and which she denied having, and to show that her answers were false and that the disease continued and existed at the time the contract was delivered, and that the assured was not thus in sound health at the time the policy was delivered. See Brown v. Continental Casualty Co., 161 La. 231, 108 So. 464, 45 A. L. R. 1521; Silver v. National Life Ins. Co., 6 La. App. 95; also Metropolitan Life Ins. Co. v. Moore, 117 Ky. 651, 79 S. W. 219.