## JACKSON v. UNITY INDUSTRIAL LIFE INS. CO., Inc. *
### No. 14211.

Court of Appeal of Louisiana. Orleans.
May 16, 1932.

*Rehearing denied June 27, 1932.

Chas. J. Mundy, of New Orleans, for appellant.

Jos. Rosenberg, of New Orleans, for appellee.

JANVIER, J.

In a policy of insurance issued to Willie Jackson, Unity Industrial Life Insurance Company, Inc., agreed that for and in consideration of the specified premium it would insure the life of the said Jackson. In the policy it was stipulated that if Jackson should, during the life of the policy, permanently lose the sight of both eyes, the company would pay to him one-half the face of the policy and would issue to him, without further cost, a paid-up life policy for such amount as would have been payable under the original policy, less the amount already paid for the permanent total disability resulting from total blindness.

Claiming that he has permanently lost the sight of both eyes, and alleging that defendant insurer has refused to comply with the above referred to provision of the policy, Jackson asks for judgment against defendant for $158, with interest from judicial demand. The claim is made up as follows:

| | |
|---|---|
| One-half face of policy | $ 61.50 |
| Double indemnity as provided by Act 310 of 1910 | 61.50 |
| Attorney's fees to which petitioner claims he is entitled under the Act of 1910, and which he fixes at | 35.00 |
| Total. | $158.00 |

Judgment below was for $148.

That the policy was issued is admitted, and that Jackson is not totally and permanently blind is well established. Defendant, however, seeks to justify its refusal to pay the claim on two grounds:

(1) That in his application for the issuance of the policy Jackson fraudulently set forth his age as 43, whereas he was, in fact, 53 years old; that the latter age is beyond the maximum age at which defendant accepts applications for insurance.

(2) That Jackson was totally blind at the time he made the said application and fraudulently failed to disclose this fact to defendant's solicitor.

Counsel for plaintiff counters with the following contentions:

(a) That the alleged false statement as to age was neither indorsed upon nor attached to the policy and that, therefore, under section 2 of Act No. 227 of 1916, amending and re-enacting Act No. 52 of 1906, the said statement, even if made and even if false, cannot be used in defense of a claim made on the policy.

(b) That when the policy was applied for and issued no medical examination was required and, therefore, under Act No. 97 of 1908, the insurer may not set up as a defense any physical defect alleged to have existed at the time the policy was issued, since the agent had full opportunity to ascertain the true condition of the applicant and might with reasonable diligence have ascertained the existence of any such extreme abnormality as total blindness.

(c) That even if such misstatement was made in the application and even if such fraudulent failure to disclose his physical condition was resorted to, nevertheless these facts may not now be availed of by the insurer, since the policy has been in force more than two years; it being stipulated in the policy that "this policy shall be incontestable after two years from date, except as stated in condition 5, and for non-payment of premium."

It is conceded that the premiums were paid and that the exceptions stated in condition 5 have no bearing on the present litigation.

Conceding, arguendo, that there was misrepresentation as to claimant's age, we find that no statement with regard to the age is indorsed on or attached to the policy, and our Supreme Court, in a case which, on this point, cannot be distinguished from the one at bar, in referring to Act No. 227 of 1916, amending and re-enacting Act No. 52 of 1906, said:

"By the provisions of this act it is necessary that the statement relied upon as a defense be contained in a written application for the

policy, and, if it be so contained, then that the statement be indorsed on the policy at the time it is issued, or else that the application containing the statement be attached to the policy at that time." Whitmeyer v. Liberty Indust. Life Ins. Co., Inc., 166 La. 328, 331, 117 So. 268, 269.

In Thomas et al. v. Shreveport Mut. Ben. Ass'n, 17 La. App. 412, 415, 136ʹ So. 217, 219, our brothers of the Second Circuit held that the act of 1916 was not applicable to mutual benefit associations, but recognized that, to an insurance corporation, no such defense as is now under discussion is available. They said:

"The plaintiff refers to Act No. 227 of 1916, as announcing the policy of this state that no statement of the insured shall be used in defense of a claim under the policy, unless it is contained in a written application attached thereto.

"We accept this rule of law as governing contracts of insurance between life insurance corporations and claimants under the terms of policies issued by said corporations. * * *"

In Williams v. Unity Indust. Life Ins. Co., 14 La. App. 680, 130 So. 561, 562, we said:

" * * * In an action brought by a beneficiary on a life policy, where the insurance company defends on the ground that the assured had, at the time of the issuance of the policy, represented herself to be in a good state of health, whereas in truth she was then suffering from an incurable disease, the defendant is not permitted to adduce any evidence of such misrepresentation other than the written application therefor, which must either be embodied in, or annexed to, the policy itself." (Citing many authorities.)

Therefore, that claimant may have misstated his age is not now available to the insurer as a defense.

Nor is insurer's position with reference to the claim that blindness existed when the policy was issued any more tenable because here, again, an insurmountable obstacle is encountered in Act No. 97 of 1908, by which it is provided that, where no medical examination is required before the issuance of the policy, " * * * It shall also be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health. * * *"

That a charge that a defective physical condition existed prior to the issuance of the policy may not be resorted to as a defense, where no examination was made and where the company's agent had full opportunity to observe and inspect the applicant, was held by us many times, notably in Williams v. Unity Industrial Life Ins. Co., supra, and in Evans v. Orleans Industrial Life, etc., Ben. Ins. Co. (La. App.) 140 So. 507, 509.

If it be conceded—and in the face of the above authority such a concession is difficult to imagine—that the prior condition of claimant's eyes may be made the subject of inquiry, we feel that insurer's position would not be improved because we find from the record that the agent who procured the application for the policy states in rather positive terms that the said claimant was not blind. He says:

" * * * If the application shows that Mr. Jackson had taken a policy while on inspection with me, I know he is not blind because I will not put my name there—this is my signature."

This testimony shows plainly that the witness Bigard, agent for the defendant company, identified the application as having been received by him from Willie Jackson, and testified that at the time the said Jackson was not blind.

The point made by plaintiff and referred to by us in paragraph (c) need not be considered, since we find that neither of the defenses raised can give comfort to insurer; but, in passing, we think it interesting to note that in Mutual Life Ins. Co. of New York v. New, 125 La. 42, 51 So. 61, 27 L. R. A. (N. S.) 431, 136 Am. St. Rep. 326, in a syllabus written by the Supreme Court, appears the following:

"The gravity of the wrong cannot affect the incontestability of the policy after two years; for to permit it to affect the policy would be to create degrees of fraud.

"Misrepresentation by the beneficiary in making proof of death as to the age of the insured will not defeat his rights under a policy that is incontestable by reason of the fact that the prescriptive period has elapsed."

Having reached the conclusion that payment of $61.50 is due in accordance with the stipulation in the policy which provides for payment of one-half the principal sum in the event of permanent total loss of both eyes, it becomes necessary that we give consideration to appellee's contention that double indemnity and attorney's fees should be awarded under Act No. 310 of 1910.

It is contended by appellant that the insurance contract here involved is neither a sickness nor an accident policy, and that, therefore, the statute of 1910, which is effective only in cases involving policies "insuring any person against loss on account of sickness or accident," has no bearing or application whatever. We note that the act makes no reference whatever to life policies, and we note that the policy which is here involved is essentially one which insures the life of the assured and makes no mention of

sickness or accident, except that in the case of total blindness, it provides for payment of one-half the face of the policy. Whether such a provision is sufficient to authorize a holding that the policy is one insuring against sickness or accident is an interesting question.

We find it unnecessary to consider this vexing, though interesting, question, because we have reached the conclusion that, even if the said act be applicable to companies such as defendant and even if the policy can be considered as one insuring against sickness or accident, still no penalty should be imposed because the defense made was presented in good faith, and the information which was in the hands of the defendant was such as would have put a reasonable and prudent business man on his guard. The statute does not make it mandatory that the penalties therein provided be in all cases imposed, but only requires that they be inflicted where the refusal to pay is not found to be based on reasonable grounds, such as would put a "reasonable and prudent business man on his guard."

Here it appears that shortly after the claim of plaintiff was presented—and it must be remembered that the claim is based on the alleged loss of the sight of both eyes after the issuance of the policy—defendant came into possession of information showing that plaintiff had executed a document, for a totally different purpose, in which document it appeared that he had averred that the blindness had antedated the policy by several years.

This was certainly sufficient to cause the insurers to become suspicious and to make it entirely reasonable for them to make a full and complete investigation. We, therefore, feel that the court below was in error in awarding double indemnity and attorney's fees.

We have had under special consideration four statutes of Louisiana which we have treated as applicable to industrial life insurance companies. These statutes are Nos. 52 of 1906, 227 of 1916 (which is amendatory of and re-enacts 52 of 1906), 97 of 1908, and 310 of 1910. It will be noted that none of the said statutes is by its own terms made applicable to industrial insurance companies, and we have given much thought to the question of whether any of them can be said to apply to such a company in view of the provision in section 7 of Act No. 65 of 1906, under which such companies are organized, and which section provides "that no law, hereafter passed, shall be held or deemed to refer to the business of industrial life insurance unless the same is expressly referred to in said law."

We shall briefly outline each of the four statutes which we have so far discussed and which we have treated as applicable to industrial insurance companies and a considera-

tion of which acts is essential to a decision of this case.

Act No. 52 of 1906 requires that:

" * * * Every policy of insurance issued or delivered within the State * * * by any life insurance corporation doing business within the State shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued. * * *"

Act No. 97 of 1908 provides:

" * * * That whenever life, health or accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination of the assured by a physician, it shall be presumed (whenever it appears that the agent of the company has had an opportunity to ascertain the true condition of the health, habits or occupation of the assured, and has certified to the company the desirability of the risk), that the knowledge acquired, or which might have been acquired with reasonable diligence by the agent of the company in securing the application, as to the health, habits or occupation of the assured, has been disclosed to his principal; and it shall also be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation. * * *"

Act No. 310 of 1910 provides:

" * * * That no life, health or accident insurance company shall write policies or contracts of insurance, in this State, insuring any person against loss on account of sickness or accident, wherein payment of or indemnities shall be deferred longer than thirty days from written notice, and proof to the company, by the attending physician, in the form required by the terms of such policy or contract of insurance, informing the company of such sickness or accident, entitling the assured to payment under the terms of such policy or contract." (section 1).

Act No. 310 of 1910 further provides:

"That the insurance company guilty of such delay, in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted." (section 3).

Act No. 227 of 1916 is an amendment and

re-enactment of Act No. 52 of 1906 and contains, in effect, the same provisions.

It is very evident that, but for section 7 of Act No. 65 of 1906, each of the said acts would be applicable, because each is very broad in its terms and plainly was intended to include all companies engaged in the kind of business which is here involved.

The Act of 1906 (No. 52), as amended by the Act of 1916 (No. 227), includes in the very broadest terms "every policy of insurance issued or delivered * * * by any life insurance corporation." Surely the words "every" and "any" are so broad and all-embracing that, but for the provision in section 7 of Act No. 65 of 1906, they would be construed as including policies issued by industrial companies.

The same can be said of the provisions of Act No. 97 of 1908 to the effect that "whenever life, health or accident insurance companies" shall issue policies, etc. This language, particularly the word "whenever," seems to us as broad and all-inclusive as any of which we can conceive.

Likewise the words of the Act of 1910 (No. 310) show an intention to include all companies of whatever kind, since no exception can be deemed to have been contemplated in the words "no life, health or accident insurance company," etc.

It is apparent, then, that when each of the said statutes was passed, its framers intended that it should be applicable to industrial companies, as well as to all others.

The Legislature of 1906 said, in effect, to all future Legislatures, "if you adopt legislation with reference to life insurance companies, it shall be presumed that you do not intend such legislation to apply to industrial companies unless you mention them expressly."

While it may be doubtful whether one Legislature has the constitutional right to impose upon future Legislatures restrictions upon the form which must be followed by those future Legislatures in enacting laws, it is not necessary, in order to arrive at the conclusion to which we have come, to hold that section 7 of Act No. 65 of 1906 is violative of any provision of the Constitution. If it was so necessary, we should hesitate to so hold, because the question has not been raised and because of our doubt of the propriety of the holding by a court, sua sponte, that a legislative enactment is unconstitutional.

But the question, as we view it, is not one of constitutionality, but of statutory interpretation or construction. Can one Legislature declare that, when a future Legislature passes statutes on certain subjects, it shall be presumed that those future enactments are intended to be interpreted or construed in a certain way? That is the question which is here involved, because it will be noted that section 7 of Act No. 65 of 1906 does not provide that future Legislatures shall not enact certain legislation, or that they shall enact it in any particular form, but it merely declares that, if they do enact it in a particular form, it shall be construed in a particular way.

The thought which we have in mind is well expressed in Corpus Juris, vol. 12, on page 807, as follows:

"A legislature may prescribe rules for the construction of statutes that will be applied to statutes thereafter enacted, in the absence of a different intent expressed therein * * *."

■ In enacting section 7 of Act No. 65 the Legislature of 1906 prescribed a rule for the construction of future statutes with reference to any insurance companies; the rule being that no future legislation on the subject of life insurance should be "held," or "deemed" applicable to industrial companies, unless such future Legislatures should refer expressly to such companies. The word "held" and the word "deemed," as we view them, mean construed or interpreted. It may have been entirely within the power of that Legislature to so provide, but it was equally within the power of all subsequent Legislatures to express, in subsequently adopted legislation, a different intent, and such different intent was plainly expressed in the various statutes to which we have referred; the different intent being clearly shown by the use of the all-inclusive words to which we have referred. It follows that, since the different subsequent Legislatures expressed different intentions as to the interpretations to be placed upon their own statutes, those intentions override the rule of construction set forth in the earlier act.

■ We have been unable to find that, since the enactment of Act No. 65 of 1906, any court has discussed the effect of section 7 of that act on future legislation; but we do find that, in a very large number of cases, more than twenty-five, in fact, the later statutes to which we have referred have been applied to industrial insurance companies. It is only fair to say that in none of those cases was section 7 of Act No. 65 of 1906 discussed or considered, and that in only one of them, Oglesby v. Life Insurance Co. of Virginia, 12 La. App. 311, 124 So. 551, 552, did the court discuss the question of the general applicability of all-inclusive statutes to particular or special corporations. In such situation, where, for more than twenty-five years, statutes have been held applicable to industrial insurance companies, courts should, of course, be very loath to upset a rule which has become so firmly established. Tessier v. Jacobs, 164 La. 239, 113 So. 833.

Then, too, in the Oglesby Case, though section 7 of the act was not referred to or discussed, the court did consider the question

of whether Act No. 97 of 1908 and Act No. 227 of 1916, being general legislation and being two of the acts which we are now considering, were applicable to such special corporations as industrial life insurance companies. The court stated the contention there to be that those acts are " * * * not applicable to industrial insurance contracts, which it is urged are under the provisions of Act No. 65 of 1906, placed in a special class, and that such contracts must be construed under the general law relative to contracts and according to the provisions of the contract."

The court said:

" * * * We do not find anything in Act No. 65 of 1906 which could be said to indicate that it was the intention of the Legislature to place such contracts beyond the scope of general statutes previously enacted, or which might be subsequently enacted."

We, therefore, are of the opinion that the various general enactments to which we have referred were intended by their framers to be applicable to industrial life insurance companies and that, since such was the intention of those who enacted them, any intention of members of earlier Legislatures cannot have the effect of overriding the will of those who later adopted the statutes in question.

Defendant should pay all costs.

The judgment appealed from is amended by reducing the amount thereof to $61.50, with legal interest from judicial demand, and, as thus amended, it is affirmed; defendant and appellant to pay all costs.

Judgment amended and affirmed.

WESTERFIELD, J. (dissenting).

Section 7 of Act No. 65 of 1906 reads as follows:

"Be it further enacted, etc., That no law, hereafter passed, shall be held or deemed to refer to the business of industrial life insurance unless the same is expressly referred to in said law."

There can be no question but that this announcement of legislative policy was within the province of the Legislature. It had no more effect upon subsequent Legislatures than any other act passed during that year or in previous years, since it was only necessary for succeeding Legislatures to indicate a change of policy, either by repealing this section or, if it was deemed advisable, to refer to industrial insurance companies, eo nomine. The fact that the several acts mentioned in the majority opinion did not expressly refer to industrial life insurance indicates that the Legislature had not abandoned the policy announced in 1906, but intended that it should be continued, and, in adopting legislation without referring to in-

dustrial life insurance companies, manifested an intention to exclude them, and to persist in the policy there announced. Whether subsequent legislation should, or should not, have embodied this class of insurance companies, upon equitable or other grounds, is of no moment, since the intention of the Legislature to exclude them as manifested originally in 1906 and impliedly in 1910 and 1916 is clear.

For these reasons I respectfully dissent.