154 So. 741

## McBRIDE v. ACME INDUSTRIAL LIFE . INS. SOC.

### No. 32668.

March 26, 1934.

Rehearing Denied April 23, 1934.

Charles J. Rivet, of New Orleans, for relator Acme Industrial Life Ins. Soc.

Herman L. Midlo, of New Orleans, for respondent Elizabeth McBride.

J. I. McCain and Robert B. Todd, both of New Orleans, amici curiæ in support of plaintiff.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, all of New Orleans, amici curiæ in support of Acme Industrial Life Ins. Soc.

Porteous, Johnson & Humphrey and Sterling Parkerson, all of New Orleans, amici curiæ.

ODOM, Justice.

Plaintiff is the beneficiary under an industrial life insurance policy on the life of George McBride. The policy was issued on September 19, 1932, and he died on November 19 of that year; the cause of death being cancer of the stomach. The insurance company refused to pay the amount of the policy to the beneficiary and she brought suit. The defense urged by the company was that, at the time the deceased made application for the policy, he warranted that he was in good health, and that it was discovered after the issuance of the policy that at the time he made the application he was afflicted with the disease which caused his death.

There was judgment in favor of plaintiff as prayed for, and the insurance company appealed to the Orleans Court of Appeal. The judgment was affirmed. The defendant applied to this court for writs, which were granted, and the case is before us now for review.

 There is in the record an agreed statement of facts, which shows that the disease from which the insured died was contracted prior to the date on which the policy was issued, but that he may have been unaware of that fact. It shows further that the insured was not examined by a physician on behalf of the defendant company prior to the issuance of the policy, and further that no copy of the application for insurance signed by the insured was attached to the policy.

This statement was put into the record merely to show what could have been proved on trial. But plaintiff, in agreeing to the statement, reserved the right to object to the admissibility of any and all testimony relative to the condition of the insured's health at the time of the issuance of the policy and especially to the admissibility of what, if any, statement the deceased made with reference to his health in the application for the insurance signed by him, and to the introduction in evidence of the application, a copy of the same not having been attached to the policy.

When the case came on for trial, plaintiff objected to all such testimony. This objection was sustained, and there was judgment for plaintiff.

It is conceded that, if the provisions of Act No. 52 of 1906, as amended and re-enacted by Act No. 227 of 1916, and Act No. 97 of

1908 apply to insurance policies of this kind, the judgment is correct. Defendant, however, grounds its defense upon the proposition that the provisions of those statutes do not apply to industrial life insurance, which is authorized, defined, and regulated by Act No. 65 of 1906, a special act which, it is argued, places such insurance in a class by itself. The reason suggested why the acts of 1908 and 1916 do not apply to industrial life insurance is that neither of them mentions such insurance and section 7, Act No. 65 of 1906, provides that "no law, hereafter passed, shall be held or deemed to refer to the business of industrial life insurance unless the same is expressly referred to in said law."

It is doubtful whether any consideration whatever should be given section 7, Act No. 65 of 1906, for the reason that the subject-matter thereof is not mentioned in the title to the act. The object of the act as expressed in its title is to define and regulate the business of industrial life insurance; to provide the manner in which corporations, societies, etc., shall be authorized to do business in this state; to provide for the making of a deposit with the treasurer and the amount thereof; provided that foreign corporations, associations, etc., which have made sufficient deposit in the state in which they are incorporated or sufficient deposit in any other state, shall not be required to make deposit in this state; and fixing penalties for the violation of the act and repealing all laws in conflict with it.

No one reading the title would suspect that a provision like that contained in section 7 would be found in the body of the act. It is probable that for this reason the Legislatures of 1908 and 1916 overlooked this most

unusual provision. The bench and bar of the state seem to have overlooked it. Numerous cases involving industrial life insurance and policies issued by such companies have been before the Courts of Appeal and before this court, and, so far as the reported cases show, the court's attention was never directed to this section of the statute until the case of Jackson v. Unity Industrial Life Ins. Co. was brought before the Orleans Court of Appeal in May 1932. 142 So. 207.

Acts No. 97 of 1908 and No. 227 of 1916 are general laws which express the policy of the state with reference to insurance and insurance policies, and in express terms they refer to life insurance companies and policies generally. The act of 1908 refers to "life, health and accident insurance companies," and the act of 1916 to "life insurance policies." The companies authorized by Act No. 65 of 1906 are "life insurance companies," and the policies issued by them are "life insurance policies." We have no doubt that it was intended that the provisions of these acts should apply to industrial life insurance companies and the policies issued by them.

Act No. 65 of 1906 itself shows that the Legislature did not intend to exempt industrial life insurance companies from the general laws of the state governing life, health, and accident insurance companies, for in section 2 it is specifically provided that all corporations, societies, relief organizations, etc., "issuing policies or benefit certificates and carrying on their business in the manner and within the meaning and definition set forth in Section 1 of this Act, shall be held and deemed to be doing an *industrial life insurance business* and shall be subject to this Act, *and all*

*the other laws of this State*, not repugnant to this Act, *regulating the business of life, health and accident insurance in this State*." (Italics ours.)

There is nothing in Act No. 97 of 1908 or Act No. 227 of 1916 repugnant to Act No. 65 of 1906. The Legislature of 1906 adopted Act No. 115, p. 182, to provide for the "organization, admission and regulation of associations transacting the business of life, accident, sick benefit, or physical disability insurance *on the fraternal plan*." (Italics ours.)

Section 4 of that act provides "that, except as herein provided, such association *shall be governed by this Act and shall be exempt from all provisions of the insurance laws of this State*." (Italics ours.)

Section 4 of this act was amended by Act No. 256 of 1912 so as to provide:

"That except as herein provided, such societies shall be governed by this Act, and shall be exempt from all provisions of the insurance laws of this State, *not only in governmental relations with the State, but for every other purpose*." (Italics ours.)

Section 4 of both the original act and the act as amended contain the additional clause that "no law hereafter passed shall apply to them, unless they be expressly designated therein."

This clause corresponds to section 7 of Act No. 65 of 1906. Counsel for the insurance company and several attorneys who filed briefs as amici curiæ argue that the Legislature, by inserting section 7 in Act No. 65 of 1906, "made clear its purpose to create a distinct class of insurance business," and that "The Legislature of Louisiana did precisely

the same thing with regard to another class of insurance which it considered beneficial to the poor by Act 256 of 1912 regulating insurance issued by fraternal societies" (quoted from defendant's brief), and they point out that the act of 1912 contains a clause in section 4 similar to section 7 of Act No. 65 of 1906.

Counsel have not "read the parables aright." They overlook the fact that section 2 of Act No. 65 of 1906, which act defines and regulates the business of "industrial life insurance," provides that companies doing such business "shall be subject to this Act *and all the other laws of this State*, not repugnant to this Act, *regulating the business of life, health and accident insurance in this State*," whereas the very same Legislature adopted Act No. 115 providing for the organization and regulating of "life, accident, sick benefit, or physical disability insurance on the fraternal plan," and it specifically provided in that act that "Such association shall be governed by this Act *and shall be exempt from all provisions of the insurance laws of this State*," the amending Act No. 256 of 1912 adding "not only in governmental relations with the State, but for every other purpose." Section 4. (All italics ours.)

Both the original Act No. 115 of 1906 and the amending Act No. 256 of 1912 relating to "association" transacting benefit insurance business, "on the fraternal plan," refer in section 1 to "any corporation, society, order or voluntary association, without capital stock, organized and carried on *solely* for the mutual benefit of its members and their beneficiaries, and *not for profit* and having a lodge

system and ritualistic form of work." (Italics ours.)

The chief difference between industrial life insurance companies organized and operating under Act No. 65 of 1906 and *societies organized and operating under the other acts* referred to is that the latter are fraternal benefit societies having a lodge system with ritualistic form of work and "carried on solely for the mutual benefit of its members and their beneficiaries and not for profit," whereas the former are not fraternal organizations, have no ritualistic form of government with lodge system, are not carried on solely for the benefit of its members, but are organized and carried on for profit.

Those fraternal societies authorized under Act No. 115 of 1906, as amended, were unquestionably intended to be set apart in a class to themselves and were not intended to be governed by the general laws of the state relative to insurance companies, for the act says so in plain terms.

On the contrary, industrial life insurance companies authorized by Act No. 65 of 1906 were not intended to be so set apart, for the act in terms subjects them to all other laws of the state regulating the business of life, health, and accident insurance.

There are two significant points which must not be overlooked. The first is that Act No. 65 of 1906, defining and regulating the "business of industrial life insurance," and Act No. 115, relating to the organization and regulation of fraternal benefit societies, were adopted by the same Legislature, and the second is that the acts were introduced by the same House member, Mr. Guilbeau, the one

being. House Bill No. 79, and the other House Bill No. 85. When Mr. Guilbeau introduced his Bill No. 85, he knew, of course, what was in his Bill 79. In his Bill 85, it was provided that such societies or associations as might be organized under that act should be exempt from all the provisions of the insurance laws of the state, whereas in his Bill 79 relating to industrial life insurance companies just the opposite was stipulated. If it had been intended that industrial life insurance companies should be relieved of the general laws which express the policy of the state with reference to life insurance companies and the life insurance policies issued by them, such intent would have been clearly expressed just as it was in Act No. 115 of 1906, as amended by Act No. 256 of 1912.

We cannot therefore give section 7 of Act No. 65 of 1906 the effect which counsel think it has.

In this connection, we take occasion to say that, while this court has not heretofore had occasion to pass directly on the point here raised, it has in at least two cases had before it questions involving the liability of industrial life insurance companies to beneficiaries under policies issued by them and in those cases has referred to and applied the general laws with reference to life insurance companies and life insurance policies. Shuff v. Life & Casualty Ins. Co., 164 La. 741, 114 So. 637; Whitmeyer v. Liberty Industrial Life Ins. Co., 166 La. 328, 117 So. 268.

In numerous cases decided by the Courts of Appeal the general statutes have been applied to industrial insurance contracts, and in at least two notable cases it was held specifically that the general laws do apply to

such policy contracts. Oglesby v. Life Ins. Co., 12 La. App. 311, 124 So. 551 (Second Circuit); Jackson v. Unity Industrial Life Ins. Co. (La. App.) 142 So. 207 (Orleans Circuit).

Construing all the provisions of Act No. 65 of 1906 together and keeping in mind the provisions of Act No. 115 adopted at the same session, we do not think the Legislature intended to place industrial life insurance contracts beyond the scope of the general statutes previously enacted or which might be subsequently adopted declaring the, general policy of the state with reference to life insurance policy contracts.

The judgments of the First city court of the Parish of Orleans, section C, and the Court of Appeal, Orleans Circuit, are affirmed.

ST. PAUL, J., absent.