## Succession of WATSON v. METROPOLITAN LIFE INS. CO.*
### No. 14837.

Court of Appeal of Louisiana. Orleans.
June 28, 1934.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, all of New Orleans, for appellant.

James N. Brittingham, Jr., of New Orleans, for appellee.

*Rehearing denied 156 So. 590.

JANVIER, Judge.

Albert W. Newlin, public administrator, having qualified as administrator of the estate of Frank Watson, brings this action seeking to recover from Metropolitan Life Insurance Company the full amount of two life insurance policies issued by the said company on the life of Watson.

The company admits the issuance of the policies and the death of Watson, but averring that, at the time of the death, the said policies had lapsed, maintains that it is liable not for the full amount of the policies, but, under the terms of the policies themselves, only for the respective amounts of paid-up insurance which the reserve provided for in the policies would have purchased at the time of the respective lapses.

The administrator concedes that the policies had lapsed, but maintains that, in view of the provisions of Act No. 193 of 1906 of the State of Louisiana, the sum due on the policies is not limited to the amount of paid-up insurance which the reserve accumulated by the policies would, under the terms of the policies, have purchased at the time of the respective lapses, but is the full face value of the policies. The contention is that under the said act, where a policy issued by a so-called "legal reserve life insurance company" has lapsed and the assured has not exercised an option as to how the said reserve shall be applied, the said reserve may not be applied by the company to the purchase of "paid-up" insurance for a comparatively small amount, but must be used to extend the full amount of the policy for such time as the reserve will pay for.

Stated otherwise, the question is whether, when there is a lapse in such a policy, the reserve must be applied to the purchase of the full amount of insurance for a short period, or may be applied, if the policy so provides, to the purchase of fully paid protection for a smaller amount.

It is conceded that, if the statute forces the application of the reserve to the purpose of the full amount of insurance for a short period —in other words, extended insurance—the death occurred within what would have been the extended term, and that, thus, the full amount of both policies would be due.

It is also conceded, on the other hand, that if the reserve may be applied as it was here. then the said reserve would have purchased the amount of paid-up insurance which the company admits is due.

There are presented other questions which we shall consider before addressing ourselves to the principal controversy above stated. At this point we may state that in the court below there was judgment for plaintiff for the full amount of the policies.

In the first place, since plaintiff's claim for extended insurance arises, if it arises at all, solely through Act No. 193 of 1906, and since defendant vehemently denies the application of that statute, we shall consider the contention that, because of the absence from the statute of any reference to industrial life insurance, it can be applied to defendant's business, since the said business is not such as was within the contemplation of the Legislature of Louisiana, when, in enacting the earlier general statute (No. 65 of 1906) it provided, in section 7, that: " * * * no law, hereafter passed, shall be held or deemed to refer to the business of industrial life insurance unless the same is expressly referred to in said law."

It is conceded, as indeed it must be, that it has now been definitely settled by the decision in McBride v. Acme Industrial Life Ins. Society, 179 La. 701, 154 So. 741, 743, recently decided by the Supreme Court, that in spite of the above-quoted provision in Act No. 65 of 1906, Laws such as Act No. 227 of 1916 and Act No. 97 of 1908 do apply to such business, although no express reference thereto is to be found in such subsequent laws. In the McBride Case the Supreme Court, with reference to the attorneys who presented the contention that the subsequent act could not be held to refer to such industrial companies, said: "Counsel have not 'read the parables aright.' They overlook the fact that section 2 of Act No. 65 of 1906, which act defines and regulates the business of 'industrial life insurance,' provides that companies doing such business 'shall be subject to this Act *and all the other laws of this State*, not repugnant to this Act, *regulating the business of life, health and accident insurance in this State.*' * * * "

In the earlier case of Jackson v. Unity Indust. Life Ins. Co., 142 So. 207, 212, we had likewise said: "We, therefore, are of the opinion that the various general enactments to which we have referred were intended by their framers to be applicable to industrial life insurance companies and that, since such was the intention of those who enacted them, any intention of members of earlier Legislatures cannot have the effect of overriding the will of those who later adopted the statutes in question."

But counsel contend that, though one Leg-

islature may not bind subsequent Legislatures with regard to the interpretation which may be placed upon words or phrases, the act involved here, Act No. 193 of 1906, was enacted by the same Legislature which had passed the earlier Act No. 65 of 1906, and that, therefore, the reasoning which we advanced in the case of Jackson v. Unity Indust. Life Ins. Co., supra, is not applicable.

But it is not alone our reasoning in the Jackson Case which confronts counsel, but, rather, the reasoning advanced by the Supreme Court in the McBride Case, and that reasoning concededly is applicable, if sound, not only to enactments of subsequent Legislatures, but also to laws passed by the same Legislature which enacted the original statute which prohibits the application to industrial life insurance of subsequent enactments which do not expressly refer to such business.

However potent the arguments of counsel might have been if addressed to our right to overrule our own pronouncement, or to supervise or correct our own reasoning, we feel that we have no right to refuse to follow and we know that we have no desire to criticize the conclusions reached by the Supreme Court. In such case we desire only to make certain that we understand, and in the present instance we feel certain that we do understand, the Supreme Court to have held that such enactments as Act No. 193 of 1906 may be applied to industrial life insurance companies, though they are not specifically mentioned therein.

It is next contended that Act No. 193 of 1906 is unconstitutional in that it violates the provisions of section 16 of article 3 of the Constitution of 1921, which requires that: "Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."

We believe that only one principal object is set forth in the statute and that that object is expressed in the title, which reads as follows: "Making life or endowment insurance policies issued by legal reserve life insurance companies, or associations, to residents of this State non-forfeitable after January first, nineteen hundred and seven, after three years premiums have been paid and providing penalties for the violation of this Act."

Counsel in their brief state that: "The one and only object stated in the title is to make insurance policies *non-forfeitable*, and provide penalties for a failure so to do. A reference to Sections 1 and 3 of the act shows that they completely fulfill the object stated in the title." (Italicizing ours.)

This is true, but we cannot agree with the further statement of counsel that: "It is, however, when reference is had to Section 2 of the act that its unconstitutionality becomes apparent."

That section makes provision for application of the reserve accumulated by such policies. It does not serve a purpose different from that set forth in the title and provided by the other portions of the statute. Rather do we feel that section 2 is supplemental to section 1 and merely provides for details which necessarily result from the carrying out of the main purpose as set forth in section 1.

To revert to the main purpose: It is to prevent companies from forfeiting policies which have accumulated reserves and from applying those reserves to their own uses. Concededly, in each of such cases there is a reserve which belongs to someone. If the purpose of the law is to prevent the appropriation by the company of this reserve, we believe it merely incidental to that main purpose to require that the said reserve shall be disposed of in a certain way, or in one of several ways. If section 1 stood alone, the result would be that in such case a company might not take unto itself the accumulated reserve on a forfeited policy. Other legislation would be necessary to provide for the distribution of the said reserve. If so, then why should not such other legislation be included as a part of the statute which provides for the carrying out of the main object.

In the syllabus in White Oil Corp. v. Flanagan, 153 La. 838, 96 So. 675, we find that: "Title of act need not mention means, method, or instrument by which it is intended to accomplish general purpose, and need not be an index to provisions of the act, but is sufficient if it goes into the subject so as to place all persons in interest upon reaonable notice to make inquiry into the statute itself."

In State v. Guidry, 142 La. 422, 76 So. 843, 846, the Supreme Court said: "The constitutional requirement that a statute shall embrace only one object does not mean that each and every means necessary to accomplish the object of the law must be provided for by a separate act relating to it alone. A statute that deals with several branches of one subject does not thereby violate the constitutional requirement that the act must have only one object."

See, also, State v. Patterson, 160 La. 269, 107 So. 106; State v. Norris, 161 La. 988, 109 So. 787; McIntyre v. Sovereign Camp, W. O. W., 172 La. 810, 135 So. 365.

We conclude that the statute is not unconstitutional.

■ The next contention to be considered is that defendant is not a "legal reserve life insurance company" such as is contemplated by Act No. 193 of 1906 and that, therefore, the statute has no application to it.

We find in the stipulation of counsel the following: "It is agreed by and between counsel for plaintiff and defendant, that the Metropolitan Life Insurance Co., is a legal reserve life insurance company organized under the legal reserve laws of the State of New York in the sense that the terms 'legal reserve life insurance company' and 'legal reserve laws' are employed in usual and customary insurance phraseology; however, the defendant does not admit it is a legal reserve life insurance company organized under the legal reserve laws of the State of New York in the sense in which these terms are employed in Act 193 of the General Assembly of the State of Louisiana of 1906 or in Act 57 of the General Assembly of the State of Louisiana for the year 1932, nor does defendant admit that either of said acts applies to the policies herein sued on but, on the contrary, denies that said acts apply to said policies."

We are not told what type of legal reserve life insurance company is contemplated by the act, nor why there is a difference between such type as may be contemplated and defendant company and, since defendant admits that it is organized under the legal reserve laws of the state of New York, we conclude that it is a legal reserve company at least in a general sense. The act of 1906 does not limit its application to any particular type of legal reserve company, nor to those organized in this state.

Since it is admitted that on each of these policies there has accumulated a reserve and since the company admits that it is doing business under the legal reserve laws of New York and since there is no explanation of the difference between defendant company and any other legal reserve companies, we conclude that such companies as defendant are within the contemplation of the statute. We note particularly that the application of the statute is not limited to any special type of legal reserve company, but, by its own terms, controls "any" legal reserve life insurance company and doing business in this state.

The main contention arises from plaintiff's interpretation of section 2 of Act No. 193 of 1906. His counsel contend that under that section, where a reserve has accumulated on a lapsed policy which has been in force for three years or more, and the insured has not indicated his selection of one of the options which may be offered in the policy for the application of the said reserve, then the said reserve must be applied to the extension of the policy in full force for such time as the amount of the reserve will pay for.

Counsel for the insurer contend that the statute does not make such application mandatory in all such cases, but only produces that result where the policy does not provide otherwise. The pertinent provision with which we are now interested declares that, where there is a lapse on such a policy: "The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount * * * so long as such surrender value will purchase non-participating temporary insurance, * * * and provided further that any value allowed in lieu thereof shall be at least equal to the net value of the temporary insurance * * * herein provided for."

It is very evident that the main purpose of the framers of the act was to prevent the forfeiture of such reserve and to compel its application for the use and benefit of the insured. The legislators, realizing that such an accumulated reserve in truth belongs to the insured, provided that, if such policies should be permitted to lapse for nonpayment of further premium, nevertheless the accumulated value should be given to the insured in some form. We find no requirement that it be given in cash or in any particular form of insurance protection, but merely that it be given to the insured in any manner agreed upon, or that he be offered options as to its application. The only limitation is that, in whatever form it be given him, "any value allowed * * * shall be at least equal to the net value of the temporary insurance * * * herein provided for."

We note particularly the words that "the

\* \* \* reserve \* \* \* shall be applied as a surrender value *as agreed upon in the policy* \* \* \*." (Italicizing ours.)

■ It is a well-known fact that there are at least three well-recognized methods of applying a surrender value:

(1) By paying it in cash.

(2) By using it to extend the full policy for a short term.

(3) By using it to purchase a small amount of fully paid insurance.

There may also be other ways in which it may be applied.

■ But the statute makes no requirement that it be applied in any particular way, but expressly recognizes the right to apply it "as agreed upon in the policy." It follows that, if there is in the policy any agreement as to the application of the reserve. and if that agreement produces a result not repugnant to the statute, then the policy provision may be carried out unhampered and unaffected by the statute.

It is only where no application is provided for in the policy, or where several optional methods are provided and none has been selected by the assured, that the statute requires that the reserve shall be applied to the purchase or extended insurance for a short time and for the full amount. This thought is expressed in the words. "\* \* \* if no other option expressed in the policy be availed of by the owner thereof \* \* \*."

Nor are we in any way shaken in our view by a consideration of Act No. 57 of 1932, which is amendatory of Act No. 193 of 1906.

The later act, which, it is conceded, has no direct bearing here, amended the earlier act to the extent of requiring that where, in a lapsed policy, there are options for the application of the reserve and the insured has not indicated his selection of one of the alternative methods, then the reserve shall be applied "either to purchase \* \* \* paid-up insurance \* \* \* or to continue the insurance in force at its full amount \* \* \* so long as such surrender value will purchase non-participating temporary insurance. \* \* \*" In the earlier act the application of the reserve in such case was limited to the purchase of extended insurance; whereas, under the later act, it may be applied either to that purpose or to the purchase of paid-up insurance, and counsel for plaintiff argue from this that, since a statute was required to give the right to make application of the reserve to the purchase of paid-up insurance, that right did not exist prior to the statute and that, consequently, there was no such right at the time of the lapse of the two policies in question here.

We see no such result. Prior to 1932 there was no restriction placed upon the right of the parties to contract with reference to the accumulated reserve except that it was required that such reserve could not be forfeited to the company, but must be given to the insured in some form. The later act makes no change with reference to the right of contract, but merely provides alternative methods of application where there has been no agreement in the policy and where the insured has not himself made a selection of one of several options.

■ The policies involved here make provision for the application of the reserve in the event of lapse. That provision reads as follows: "After premiums upon this policy have been fully paid for the respective periods named in the table below, then in case of default in the payment of any subsequent premium the company will, without action on the part of the holder, continue this policy as a non-participating Free Policy, payable on the same conditions as this policy but upon which no further payment of premiums shall be required, for a reduced amount in accordance with the following table, but any indebtedness to the company herein if not repaid, will reduce such amount in the proportion which the indebtedness bears to the amount of surrender value used as a single premium in calculating the values appearing in the table."

This provision needs no interpretation. It plainly states that, without the payment of further premiums, the reserve shall be applied to continue the policy "for a reduced amount in accordance with the following table." The policy also contains a specific table under which it may be determined how much paid-up insurance has been purchased, and we find in the record a stipulation to the effect that the amount which the defendant admits is due is the correct amount in accordance with the said table.

We conclude that the contention of the defendant company is correct and that the amount to which plaintiff is entitled is fixed in accordance with the policy. We find that under policy No. 73558281 the amount to which plaintiff is entitled is $22 and that under policy No. 76961348 the amount which plaintiff is entitled to is $100.

■ It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by reducing the amount

thereof to the sum of $122, with interest at 6 per cent. per annum from judicial demand. Costs of appeal to be paid by appellee; all other costs to be paid by appellant.

Judgment amended.