Counsel for the insurance company say in their application for rehearing:
"That the court erred in holding that since the testimony was not reduced to writing and there was no agreed statement of facts and neither of the lower courts rendered written reasons for judgments, the writ of review previously issued should be recalled and petitioner's application therefor dismissed, since the record disclosed the existence of a question of law which this court can and should decide."
Complying with their earnest solicitation, we granted a rehearing in this and the companion case of Ada Simpson v. First National Life Insurance Co., 184 La. 649, 167 So. 178, which involved the same issues.
Casting aside the question whether we should have done so originally, we shall now dispose of the question of law which counsel say was presented by the application for writs and which they say we should have decided, which question of law, to quote counsel's brief, is this: *Page 638 
"Do the provisions of the nonforfeiture statute — Act No. 193
of 1906 — apply to policies issued by domestic life insurance companies writing no business other than industrial life insurance in this state?"
The answer to this question, in the abstract, is found in the case of Succession of Frank Watson v. Metropolitan Life Insurance Company, decided on original hearing February 4, 1935, and on rehearing July 1, 1935. 183 La. 25, 162 So. 790, 791.
It was there contended, as here, that Act No. 193 of 1906 does not apply to industrial life insurance, and we said in our opinion on original hearing:
"Act No. 193 of 1906 is a general law under the provisions of which life insurance policies become nonforfeitable for nonpayment of premiums after three years' premiums have been paid. Under the decision in the McBride Case [179 La. 701,154 So. 741], the statute is applicable to the business of industrial life insurance, although that business is not specifically referred to therein. The question involved in this case is not different from the one involved in the McBride Case, because Act No. 193 of 1906 was enacted by the same Legislature which had previously enacted Act No. 65 of 1906. The legal principle governing both cases is the same."
In our opinion on rehearing we said:
"Counsel, in argument and brief, present two issues to this court, viz.: Is Act No. 193 of 1906 applicable to industrial life insurance? If it is, is section 2 of the act mandatory and controlling, regardless of the conflicting terms of the insurance contract? *Page 639 
"On the authority of McBride v. Acme Industrial Life Insurance Society, 179 La. 701, 154 So. 741, we disposed of the first issue by holding that Act No. 193 of 1906 is applicable to industrial life insurance, and we disposed of the second issue by holding in our original opinion herein that section 2 of the act is mandatory, and conflicting terms of the insurance contract must give way to the mandatory provisions of the act. In so holding, we said, in the last paragraph of our reasons for judgment, the following:
"`Our conclusion is that the plaintiff cannot be compelled to accept paid up insurance as provided in the policy. Act No. 193
of 1906 was dictated by public policy. It was enacted to protect the insured. It expressly prohibits him from waiving in any application, policy or otherwise any of the provisions of section 2. The statute is mandatory and its provisions control the provisions of the policy. To fully protect the insured its provisions must be interpreted so as to give him his choice of benefits at the time the policy lapses.'
"Section 2 of the act provides that in the event the insured does not exercise his choice of benefits, at the time the policy lapses, the accumulated reserve, when the policy has been in force for more than three years and has lapsed for nonpayment of the premiums due thereon, must be applied to the purchase of extended insurance."
McBride v. Acme Insurance Company was decided in March, 1934. What we held in that case was that the statutes of the state relating to life insurance generally were applicable to industrial life insurance. Prior *Page 640 
to that time two of the Courts of Appeal had reached the same conclusion. Oglesby v. Life Insurance Company, 12 La.App. 311,124 So. 551 (Second Circuit, decided November 18, 1929); and Jackson v. Unity Industrial Life Insurance Company, 142 So. 207 (Orleans Circuit, decided May 16, 1932).
In the Watson Case, supra, it was admitted by the defendant company that it was a legal reserve company, and the policy contained a clause to the effect that it should be nonforfeitable after the payment of three annual premiums. The premiums were paid weekly, and after paying these weekly premiums for a period of more than three years, the insured ceased payments and the policy lapsed for that reason. The insured died without taking any steps to have the policy renewed. It was found, however, that the accumulated reserve on the policy was sufficient to purchase nonparticipating term insurance for the amount stipulated in the policy for a period extending beyond the date of the insured's death, and the company was required to pay the insured's succession the full amount of the policy.
The present suit is based on an industrial life insurance policy for $91. Here, as in the Watson Case, the premiums were payable weekly. But here, unlike the Watson Case, the policy contains no nonforfeiture clause and no options. It is provided in clause 5 printed on the back of the policy, under the heading "Conditions," that, "This policy shall not lapse for nonpayment of premiums until the payment of premiums for four (4) weeks are in arrears," and in the face of the policy it is *Page 641 
stipulated that, "Whenever for any cause this policy shall terminate or become void all premiums previously paid shall be forfeited to the company, unless otherwise expressly provided herein." It is not otherwise "expressly provided" in the policy. The policy, after having been kept in full force and effect more than three years, lapsed on January 2, 1933, because of insured's failure to pay the weekly premiums for more than four weeks, and the insured died several months later.
The plaintiff alleged and contended that the insurance company had, as a matter of fact, set aside a "reserve" to be applied to this and all other policies of like character issued by it, and that such "reserve" was sufficient to carry the policy, in so far as the life insurance feature thereof was concerned, for a period extending beyond the date of insured's death, and that even though the policy stipulated that it should be forfeited in case the insured failed to pay four weekly premiums, and that all premiums previously paid should be forfeited to the company, such stipulations must yield to the expressed provisions of Act No.193 of 1906 to the effect that if the policy has been in effect more than three years, the accumulated reserve thereon must be applied to the purchase of extended insurance. This is precisely what we held in the Watson Case, supra, and we adhere to the ruling there made.
But the defendant company denied in its answer to the suit, and also in answer to certain interrogatories propounded to it by the plaintiff, that it was a legal reserve company as contemplated by Act No. 193 of *Page 642 
1906, and denied also that it had voluntarily set aside any reserve to protect this and other like policies issued by it. However, we find in the record a brief filed by counsel for defendant in the First city court, where the case originated, which brief discloses not only what was proved on the trial of the case, but defendant's theory of the case and its defense. We quote the following pertinent parts of that brief, as follows (the italics are as found in the original brief):
"May your Honor please:
"As we understand the case as it now unfolds itself before your Honor, there is only one question before the Court for decision:
"Has the defendant insurance company under the 1906 Act, as amended, the right to adopt its own standard for computing its reserve?
"The testimony before the Court is to the effect that the company voluntarily set up a reserve against its `outstanding'
policies. This reserve amounts to $20,000.00, and, in computing the proportion of the reserve to each policy, the company adopted as its standard a method of dividing the total number of outstanding policies into the amount of the net reserve or in the case before your Honor, divided 16,000.00 dollars by 40,000 policies which gave a reserve on each policy of 40¢.
"The reason why the company divided the 40,000 policies into 16,000.00 dollars instead of 20,000.00 dollars is, because, under the Act the company has the right to deduct 20% of the reserve which its sets up *Page 643 
and 20% of $20,000.00 is $4,000.00, giving the company a net reserve of $16,000.00.
"The plaintiff challenges the company's right to calculate its reserve as aforesaid and says to your Honor you must ignore thebasis adopted by the defendant company but follow the basis of another company whose employee testifies calculated their reserve on its policies on an entirely different basis.
"We say to the Court, under Act No. 193 of 1906 this defendant is given the right by the Legislature to adopt its own standardfor computing its reserve and is in no way bound or interested in the methods followed by other companies. A mere reading of the Act demonstrates so clearly this was the intention of the Legislature, we feel we are taking up the time of the Court unnecessarily in urging the subject in this memorandum.
"Section 2 of Act No. 193 of 1906, page 347, lines 8 and 9,
contains the following:
"`The reserve on such policy computed according to the standardadopted by said company.'
"By reference to Act No. 57 of 1932, page 266, lines 9 and 10,
your Honor will find the identical verbiage is used in the amended act.
"Therefore, if it was not the intention of the Legislature to give insurance companies the right to adopt their own standard for computing their reserve, then we say, by repeating this identical verbiage in the amended 1932 Act the Legislature has been convicted of imbecility. We do not believe this Court will so hold. *Page 644 
"The second question before your Honor is the right of the company to apply the reserve which it sets up against each policy.
"The plaintiff says to the Court the 40¢ should be applied to purchase extended insurance, although nowhere in this policy is any provision made for extended insurance and the evidence shows this defendant does not issue extended insurance.
"Our answer to the plaintiff is, under the very Act in question(No. 193 of 1906), the company has the right to keep its policy in full force and effect for such a period of time as the reserve, calculated on the standard adopted by the company, will keep the policy in full force and effect. And this is exactly what the company's witnesses testify has been done.
"Let us see if the defendant, under the Act in question, has the right to do this. By referring to section 2 of Act No. 193 of1906, page 347, lines 16 and 17, your Honor will find the following verbiage:
"`* * * shall be applied to continue the insurance in force at its full amount.'
"And to remove any doubt this is exactly what the Legislature intended, is gleaned from the amendment of this section as found in Act No. 57 of 1932, page 266, lines 24 and 25, wherein the identical language is used in the amended act. * * *
"In conclusion we say to your Honor, when an insurance company is brought into Court on a lapsed policy which the plaintiff contends has been kept alive because of the reserve set up against the policy by the company, the insurance carrier has the right to come into Court and say it is true we *Page 645 
have set up a reserve, but this reserve is calculated on astandard adopted by ourselves, and when the defendant shows this, the only question then before the Court is, having established the amount of the reserve on the standard adopted by the company, how long was the policy kept in force and effect by that reserve. The Court then ascertains if the company kept the policy in fullforce and effect, and if so was it kept alive for the period of time that the reserve would have paid the premium for the full face value of the policy. If this is shown to be a fact, judgment must be for the defendant and this is what has happened in the case before you.
"The policy lapsed on January 2d 1933. This is admitted. Under the 40¢ reserve the insurance was kept in full force and effect for forty (40) days thereafter or to February 6th, 1933. It is admitted the insured died on April 17th, 1933, or long after the period of time that the reserve kept the policy in full force and effect."
It therefore appears from defendant's own statements that in the trial court it was proved, and, so far as we are informed, without objection, that this company had voluntarily set up a reserve of $20,000 against its outstanding policies, the policy involved being one of them; that counsel for defendant conceded that the provisions of Act No. 193 of 1906 were applicable; that the only questions involved were whether the company had the right, under Act No. 193 of 1906, to "adopt its own standard of computing its reserve," and whether the reserve computed according to *Page 646 
its standard was sufficient to keep this policy alive beyond the date of deceased's death.
Counsel for defendant, we think, made the only defense in the lower court it could have made. Plaintiff had the right to prove, if it could, that the defendant had set up a reserve against this and other like policies issued by it. Defendant could not, if it had tried, have excluded testimony of this character. Apparently it did not try. In this case there was a reserve. Since there was, this policyholder was entitled to his just proportion of it and Act No. 193 of 1906 necessarily applied under our holding in the Watson Case.
Counsel's defense was not based upon the theory that the act of 1906 did not apply, nor could it be, because it was shown that there was a reserve. To the contrary, they invoked the provisions of that act in support of their contention that the company was given the right to set up its own standard for "computing the reserve" applicable to each policy. The act in section 2 says that: "The reserve on such policy, computed according to the standard adopted by said company, together with the value of any dividend additions upon the policy, after deducting any indebtedness to the company and one fifth of said entire reserve, shall," etc.
The "standard adopted" by this company for computing the reserve to the policies was to take the total amount of the reserve set up for all the policies, deduct one-fifth of that amount, which it was authorized by the statute to do, and apportion the remainder equally to the policies. In order to arrive *Page 647 
at the amount of the reserve to be apportioned to each policy, it divided the net amount of its total reserve by the total number of its outstanding policies and set apart to each policy the quotient, which was 40 cents. It was conceded that if this amount, 40 cents, had been sufficient to carry the policy for a period of time extending up to or beyond the date of the insured's death, the plaintiff was entitled to recover.
One of the serious errors into which counsel have fallen is their assumption that the Legislature intended that an insurance company might adopt such an arbitrary, inequitable, and unjust standard for apportioning its reserve to the outstanding policies. According to the standard adopted by this company, each policy, regardless of the length of time it had been in force, the age of the policyholder or the rate of premium paid by him was credited with exactly the same amount, 40 cents. The result of this so-called "standard of computation," which counsel say the company was authorized by the act to make, is that a policy which was kept in force by the payment of premiums for three years and one month, and then allowed to lapse for nonpayment of premiums, would be automatically extended under the act for the same length of time as a policy which had been kept in force and effect for nine years and three months. *Page 648 
The language of the act refutes counsel's argument. Each policy has a cash surrender value made up of the "reserve" on the policy "together with the value of any dividend additions upon said policy." The surrender value of a policy kept in force for three years and one month is necessarily less than if it had been kept in force for a greater length of time. It is the cash surrender value of the policy at the time it lapses which determines the length of time it remains in force after the lapse. To so apportion the entire net reserve of the company to all its policies as to give each policy the same surrender value and thereby to say in effect that each policy shall be continued for the same length of time in case of lapses is contrary to both the letter and the spirit of the law.
Now whether the reserve properly apportioned to this policy was sufficient to keep it alive for a period beyond the date of the insured's death is purely a factual question which we can not decide, because the testimony is not before us. As to that, both courts decided in favor of the plaintiff.
For the reasons assigned the writ issued in this case is recalled and vacated, and relator's application is dismissed at its costs. Relator's right to apply for rehearing is reserved.
 O'NIELL, C.J., dissents. *Page 649