## WINDERS v. CO–OPERATIVE BURIAL ASS'N.*

### No. 4837.

Court of Appeal of Louisiana. Second Circuit.

Nov. 2, 1934.

W. H. Betts, of Hempstead, Tex., and J. B. Crow, of Shreveport, for appellant.

Cook & Cook, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff held a certificate of membership in defendant corporation wherein defendant

*Rehearing denied December 5, 1934.

agreed to furnish to her and the members of her family, named in the certificate, including her husband, upon the death of either, the following: Complete funeral, casket, robe, and hearse. The cost of the casket was limited to $150. Her husband died on February 12, 1933, and this suit was filed to recover $205, the amount of expenses necessarily incurred by plaintiff to provide decent interment of his body. She alleges that when the membership certificate was delivered to her, she was advised by defendant's agent that in the event of death of any person named therein, she should communicate with McCook Brothers Funeral Home, Inc., in Shreveport, who would perform for defendant the duties by defendant assumed under the terms of the certificate, and that this was done, but this company advised her it had no arrangements with defendant to perform said services; and that then a demand was made upon defendant itself to comply with its obligations under the certificate, but it did not do so; whereupon she made arrangements for and caused the funeral of her husband to be had, purchased casket, clothes, etc., all of which she had paid defendant to do and perform. The cost of burial clothes, bathing and dressing the body, casket and box, and hearse service, for which she sues, are all alleged and proven to be reasonable charges and necessary for the purpose incurred.

Defendant first pleaded that the membership certificate held by plaintiff was null and void, ab initio, and without binding effect on it, because its consent thereto was procured by the deception and misrepresentations of plaintiff regarding the good health of her said husband when membership was applied for; and that its agents did not have, by the exercise of reasonable diligence, opportunity to ascertain the true conditions of the health of deceased. Secondly, it denies that it had any arrangements with McCook Brothers Funeral Home, Inc., whereby it was obligated to perform the service and furnish the funeral habiliments, etc., mentioned in the certificate. Thirdly, defendant denies that plaintiff, or any one else for her, notified it of the death of her husband, or made demand upon it to furnish the burial equipment and perform the services provided for in said certificate. It is admitted by defendant that an agent of said McCook Brothers Funeral Home, Inc., on the day of the death of Mr. Winders, communicated with an agent of defendant in Monroe, La., by long distance telephone, and from him learned of Winders' death, and not knowing that said membership certificate was null and void and without effect for the reasons above set forth, defendant's said agent in Monroe did communicate with one of its agents in Shreveport and to a duly authorized and licensed undertaker, and through these agencies defendant, being ignorant of the nullity of said certificate, did offer to furnish casket, burial robe, hearse service, and to conduct the funeral of said Winders, and would have so furnished said goods, merchandise, and service if plaintiff had agreed to deliver his body to the undertaker agent of defendant, which she did not do.

It is further averred that said membership certificate would not have been issued to plaintiff if she had truthfully stated the condition of the health of her deceased husband, and that she knowingly made false statements relative thereto. Liability to plaintiff on any account is denied.

Plaintiff was given judgment as prayed for. Defendant prosecutes this appeal therefrom.

In her application for membership in defendant association, plaintiff certified that each member of her family listed therein "is presently in sound health." The application contains the further statement on her part that if there are any misrepresentations therein the membership certificate shall be void, and no benefits thereunder shall accrue to her or the other beneficiaries named therein.

It is admitted by plaintiff that her husband was not in sound health when the application for membership was signed by her and accepted by defendant, and that he died of the malady from which he then suffered, within six weeks after the certificate issued. It is shown, however, that defendant's agent, who solicited plaintiff to join defendant's association, was made aware of deceased's poor health, and that he had ample opportunity to acquaint himself with the true facts of his physical condition. He collected one month's dues from plaintiff after certificate was delivered. No medical examination was made of deceased by a physician. The application was not attached to the membership certificate.

The charge of fraud and deception against plaintiff is not sustained by the testimony. Regardless of all this, plaintiff's contention is that since no medical examination by a physician was made of deceased before the certificate issued, and the application for membership not being attached to the certificate, the door is closed to inquiry into the

condition of deceased's health when the application was made or certificate issued. We think this position well taken.

Defendant is engaged in the business of industrial life insurance, as defined by Act No. 240 of 1916, in that its certificates or contracts are not for sums in excess of $500, the premiums or dues thereunder are payable monthly, or for lesser periods, and a funeral is therein provided for.

It is now well settled that Act No. 97 of 1908, as amended by Act No. 195 of 1932, applies to insurance contracts issued by those engaged in industrial life insurance. These acts provide that whenever a life, health, or accident insurance company issues a policy or contract to the assured without a medical examination by a physician, it shall be presumed (when it appears that the company's agent has had an opportunity to ascertain the true condition of the assured's health, habits, or occupation, and has certified the desirability of the risk) that the knowledge acquired, or which might have been acquired with reasonable diligence by the company's agent, as to the health, habits, or occupation of the assured, has been disclosed to his principal, and further, the act as amended provides: " * * * it shall also be presumed that the corporation has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupations whenever it shall appear that the agent of the corporation knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the corporation in writing the application or of the collector of the corporation in collecting the premiums from the assured, shall be imputed as notice to the corporation, as to the health, habits or occupation of the assured."

In the case of Jackson v. Unity Industrial Life Insurance Co. (La. App.) 142 So. 207, it was held that: "Statute providing statement relied on by insurer as defense must be indorsed on or attached to policy held applicable to industrial life insurers (Act No. 227 of 1916, § 2, amending and re-enacting Act No. 52 of 1906; Act No. 65 of 1906, § 7)."

And again, on same subject, in McBride v. Acme Industrial Life Ins. Society (La. App.) 150 So. 110, the syllabus is as follows: "Evidence of statements relating to applicant's health made in application for industrial life policy was inadmissible, where insured was not examined by physician prior to issuance of policy and application was not annexed thereto (Act No. 52 of 1906, as amended by Act No. 227 of 1916; Act No. 65 of 1906, § 7; Act No. 97 of 1908)."

In this case the court reaffirms its prior decisions construing the statutes pertinent to the question discussed, and cites numerous cases of the Courts of Appeal and Supreme Court in support of the holding. We concur with our brothers of the other Appeal Courts in their interpretation of these statutes.

We do not think the other defense advanced by defendant tenable. Its obligation was clearly to promptly take charge of the body of plaintiff's husband and prepare it, or have it prepared, for decent interment. He died in his own home in the city of Shreveport, at 12:40 p. m., on a Sunday. The matter of the arrangement of details looking to the preparation of the body for burial was intrusted to a man by the name of Taylor, a neighbor of deceased. He carried the membership certificate held by plaintiff to an undertaker of the city, who declined to undertake the performance of the duties devolving upon defendant therein, but referred Taylor to McCook Brothers Funeral Home, Inc. He then went to defendant's office in the city of Shreveport, and found the door open but no one in. After some futile efforts to locate a Mr. Cloy, local manager for defendant, he proceeded to the McCook Brothers Funeral Home. From there defendant's main office in Monroe, La., was rung. The president answered. He was informed of Mr. Winders' death. He promised to ring back within thirty minutes and give Taylor some instructions as to the handling of the body, but, after waiting for an hour, no further news came from Monroe on the subject. It was then 5 o'clock p. m. Taylor then authorized McCook Brothers Funeral Home to take the body and prepare it for burial, which instructions were promptly complied with. Thereafter defendant's representatives called at plaintiff's home and at McCook Brothers place and indicated that they were willing to perform the obligations of the membership certificate, but as matters then stood neither the deceased's family nor the Funeral Home seriously considered such overtures.

The fact is, defendant's main place of business was in the city of Monroe, La., over one hundred miles from Shreveport, and it had no equipment whatever in Shreveport needful to the preparation of a body for burial or to the conducting of a funeral. Its officers admit that in the present case they would have had a hearse drive from Farmerville, La., to Shreveport, over 100 miles distant, to

remove the body to some undetermined place in order to prepare it for burial. The family had waited over four hours on defendant to comply with its duties, and certainly could not have been expected to wait three more hours for the hearse to drive over from Farmerville. The hearse did not arrive in Shreveport at all; and after experiencing such unpleasant hours and inexcusable delays, it is wholly unreasonable to have expected the family to be further embarrassed by having the body of the father and husband removed from one funeral home to another place, which, as said before, was then wholly undetermined. There was an implied obligation of the most solemn character in this membership certificate that the deceased's body would be promptly removed from his home, after death, to a decent place where the bodies of the dead are prepared for burial, and that such be done efficiently and with no undue embarrassment or mortification to those in grief. Defendant was certainly not in a position to do these things. It had agreed to do something it could not well do in Shreveport because of lack of any equipment. And not having arranged for a competent undertaker to do that which it was obligated to do, and plaintiff having acted in the matter as she was warranted to do, defendant is responsible for the expenses incurred. These, as stated before, are clearly shown to be reasonable.

Judgment affirmed, with costs.