### NECK v. RELIANCE INDUSTRIAL LIFE INS. CO.* 
### No. 4995.

Court of Appeal of Louisiana. Second Circuit.
March 8, 1935.

---

*Rehearing denied April 3, 1935.

When the policy issued, plaintiff's wife suffered from lacerations of the womb, caused from childbirth. This condition had existed for nine years and was known to her and plaintiff. About May 14, 1934, she was suddenly seized by a severe attack of appendicitis, which continued with more or less severity until June 10th, when the appendix was removed by Dr. J. O. Willis, Jr. When this operation was performed, the needed repair work to the womb was also done. Neither ailment was excluded from the policy's coverage.

Plaintiff instituted this suit to recover the expense of the operation on his wife, including hospital, nurses, ambulance, medical, and surgeon's bills, alleging that these bills are all protected under the terms of the policy and are recoverable by him. The total sued for is $300.

Defendant admits issuance of the policy, but denies any liability thereunder for the amounts sued for; that no operation on Mrs. Neck was necessary, nor was that which was performed within the coverage of the policy; that the disease or diseases to relieve which the operation was performed, originated more than thirty days before date of the policy. It is also denied that plaintiff gave the insurer or its agents written notice of the first treatment to his wife within four days after such treatment, nor was any notice given of the extended treatment to her, as required by the policy.

It is further denied that the physician who performed the operation and the hospital selected by plaintiff were among those appearing upon the list designated by defendant for use, as stipulated in the policy.

Plaintiff was given judgment for the full amount sued for. This appeal is prosecuted by defendant.

George Thurber, of Shreveport, for appellant.

Hussey & Smith, of Shreveport, for appellee.

TALIAFERRO, Judge.

On April 7, 1934, defendant issued to plaintiff its Medical-Surgical-Hospital policy, wherein it agreed, in consideration of the monthly premiums to be paid by him, to furnish free to him, his wife, and two small children, medical and surgical treatment, hospitalization, advice, and consultation, "as long as and as often as required, subject to the agreements and conditions" stipulated in said policy. Certain well-known diseases and complications thereof are specially excluded from the coverage of the policy, and there follows a blanket provision excluding therefrom "any illness that originates prior to thirty days from date of this policy."

Defendant's chief defense and contention urged in support of its effort to escape liability for any part of the amount sued for is that the operation which Mrs. Neck underwent was for ailments and diseases, appendicitis and womb lacerations, which had their origin more than thirty days prior to the date of the policy. Plaintiff's reply to this contention is that the operation was primarily performed to remove the malignant appendix, and the repair work was incidental thereto. We think plaintiff correct in this position. No operation had been performed to relieve the old trouble, which had been known to plaintiff for nine years. The appendicitis attack came on suddenly and it was imperative

that it be relieved by removal of the cause. The greater part of the expense incurred on account of the dual operation is chargeable to that necessarily performed to remove the appendix. It is not shown that the cause of the appendicitis originated more than thirty days prior to the date of the policy, nor could it well be shown. The attack on May 14, 1934, was the first intimation to Mrs. Neck that her appendix was not healthy. However, even though defendant's contention, as a whole, be correct, under the law of this state and the jurisprudence of the courts, it must be held responsible to plaintiff for the expenses sued for. Plaintiff makes the point, and it is admitted by defendant's agent, that no medical examination of Mrs. Neck was made before the policy issued and that the door of inquiry is closed to it on the question of whether the ailments relieved by the operation had their origin prior to the time named in the policy, or not, in view of the sweeping provisions of Act No. 97 of 1908, as amended by Act No. 195 of 1932. There was no medical examination of Mrs. Neck before the policy issued. There is some dispute as to whether a copy of plaintiff's application for the insurance was attached to the policy when delivered. We do not think it was attached. The policy itself bears no physical marks or signs suggestive that such was done. In the application for the policy, plaintiff certified that his wife was in sound health. Anent this question, we recently had occasion to say:

"It is now well settled that Act No. 97 of 1908, as amended by Act No. 195 of 1932, applies to insurance contracts issued by those engaged in industrial life insurance. These acts provide that whenever a life, health, or accident insurance company issues a policy or contract to the assured without a medical examination by a physician, it shall be presumed (when it appears that the company's agent has had an opportunity to ascertain the true condition of the assured's health, habits, or occupation, and has certified the desirability of the risk) that the knowledge acquired, or which might have been acquired with reasonable diligence by the company's agent, as to the health, habits, or occupation of the assured, has been disclosed to his principal, and further, the act as amended provides: '* * * It shall also be presumed that the corporation has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupations whenever it shall appear that the agent of the corporation knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the corporation in writing the application or of the collector of the corporation in collecting the premiums from the assured, shall be imputed as notice to the corporation, as to the health, habits or occupation of the assured.'

"In the case of Jackson v. Unity Industrial Life Insurance Co. (La. App.) 142 So. 207, it was held that: 'Statute providing statement relied on by insurer as defense must be indorsed on or attached to policy held applicable to industrial life insurers (Act No. 227 of 1916, § 2, amending and re-enacting Act No. 52 of 1906; Act No. 65 of 1906, § 7).'

"And again, on same subject, in McBride v. Acme Industrial Life Insurance Society (La. App.) 150 So. 110, the syllabus is as follows: 'Evidence of statements relating to applicant's health made in application for industrial life policy was inadmissible, where insured was not examined by physician prior to issuance of policy and application was not annexed thereto (Act No. 52 of 1906, as amended by Act No. 227 of 1916; Act No. 65 of 1906, § 7; Act No. 97 of 1908).'" Winders v. Co-Operative Burial Association (La. App.) 157 So. 320, page 322.

This interpretation of the 1908 act, as amended, was affirmed by the Supreme Court in Eagan v. Metropolitan Life Insurance Company, 180 La. 575, 158 So. 575.

The record clearly discloses that defendant's agents had ample opportunity to acquaint themselves with Mrs. Neck's health condition, her occupation and habits, before the policy issued; in fact, one of its agents testified that Mrs. Neck discussed her condition with her (the agent) before taking out the policy. It is also shown that an agent collected a full month's premium from plaintiff on June 18th while Mrs. Neck was in the sanitarium convalescing from her operation, to the knowledge of this agent.

The policy provides:

"Written notice of injury or illness on which claim may be based must be furnished to the company or its authorized agent within four days from date of first treatment. The Company upon receipt of such notice will furnish claimants such forms as are usually furnished by it to be filled out by the attending physician showing the nature of illness or injury, and if the illness or accidental disability shall continue for more than seven days, or if the illness or disability shall be for less than seven days certificate must be

furnished at the expiration of such disability."

It is admitted that no written notice was given defendant of Mrs. Neck's operation until June 26th, some sixteen days after it was performed. There is no penalty or forfeiture provided in the policy for failing to give said notice. It is not intimated nor suggested that any loss or injury has been suffered by defendant for nonobservance of these requirements by plaintiff. Timely giving of such notices is not made a condition precedent to recovery under the policy, and, unless the policy itself contains such a provision, a court would not be justified by construction to imply that the parties intended to adopt such a drastic rule to govern their rights. Fisher v. Globe & Rutgers' Fire Insurance Company, 147 La. 984, 993, 86 So. 417; 33 Corpus Juris, p. 14, § 661; 14 Ruling Case Law, p. 1325, § 500.

The defense that Dr. Willis and the sanitarium were not designated by defendant for use in availing of the benefits provided by the policy is wholly untenable. No physician, surgeon, or hospital was designated by defendant at all. Its agent stated to plaintiff that any reputable physician in the city of Shreveport would be acceptable to the insurer. This attitude seems but a natural one.

It appears that plaintiff carried another policy which protected him against expenses for hospitalization of the character rendered Mrs. Neck, and that under said policy the hospital bill of $122.50, sued for, had been paid. He is not entitled to recover this amount. He did not pay it, but it has been paid.

For the reasons assigned, the judgment appealed from is hereby reduced to $177.50, and as thus amended it is affirmed, with costs.